HOT SPRINGS RAILROAD COMPANY v. McMILLAN.

Opinion delivered June 17, 1905.

1. JURY—PROVINCE.—It is the exclusive province of the jury to determine disputed questions of fact.   (Page 96.)

2. RELEASE—EVIDENCE.—Where plaintiff's contention was that a release signed by him, which recited the payment of a sum as consideration thereof, was obtained by fraud, it was admissible for him to prove that such sum was due him according to the custom of defendant company in dealing with its disabled employees, and that when he signed same he did so under the impression that he was signing a receipt for money due him as a disabled employee, and not a release.   (Page 97.)

3. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—It was not an abuse of discretion to refuse a new trial on the ground of the newly discovered evidence of one of the appellant's employees if there was evidence that such witness was present at the trial for the purpose of assisting in the case, and could have testified, even though he neglected to inform appellant's counsel of what he knew until after the trial.   (Page 98.)

4. APPEAL—QUESTION NOT RAISED BELOW.—That the trial court erred in rendering a personal judgment against one of the appellants will not be considered on appeal for the first time.   (Page 98.)

Appeal from Hot Spring Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Affirmed.

This suit was brought by McMillan against the Hot Springs Railroad Company to recover damages for the crushing and mangling of his left hand.   McMillan was a brakeman of the Hot Springs Railroad Company, and his injury was caused while he was coupling cars at Butterfield.   He charged that the liability of the railroad company grew out of negligence in failing to provide him with suitable and safe appliances with which to make the coupling in this: that the holes in the drawhead of one of the cars were out of shape, and the pin furnished to make the coupling was too large to pass readily through said holes. Plaintiff charged that by reason of the imperfect, unsafe and dangerous condition of these appliances his hand was caught between

the drawheads, while he was attempting to make the coupling, and badly crushed and mangled; that plaintiff was in the discharge of his duty as brakeman, and did not know of, and by the use of ordinary care could not have discovered, the dangerous condition of such appliances. Damages were laid at $25,000.

The Choctaw, O. & G. Railroad Company is made defendant because, since the injury, it had purchased the Hot Springs Railroad Company, and was operating it when suit was brought. The Hot Springs Railroad Company answered, setting up the following alleged release in accord and satisfaction, viz:

"In consideration of the sum of three hundred  forty-six and 5-100 dollars ($346.05) paid to me by the Hot Springs Railroad Company, and the agreement of the said company to pay me fifty dollars ($50) in addition to the above sum, and to employ me in such capacity as I may be able to work for a period of six months from the date hereof at a salary of not less than fifty dollars ($50) per month, I hereby release said company from any and all liability it may be under to me for and on account of an injury received by me while working as a brakeman on the railroad of said company on or about the 2d of February, 1900.

"Witness my hand and seal October 1, 1900.

(Signed.)                                   "A. H. McMILLAN."

It also denied all the material allegations of the complaint, and set up contributory negligence.

The Choctaw, Oklahoma & Gulf Railroad Company filed a separate answer, denying in detail all of the allegations of the complaint, and admitting its purchase of the Hot Springs Railroad, and that it was at that time in the possession of and operating the same, but denying that, as a purchaser or otherwise, it assumed all or any of the debts and liabilities of the Hot Springs Railroad Company, and denying that it was liable to the plaintiff for said alleged injury.

The plaintiff replied to that part of the answer of the Hot Springs Railroad Company setting up a release as follows:

"Plaintiff alleges that he never at any time agreed to release the defendant, Hot Springs Railroad Company, from the damages resulting to him from the injury complained of herein; that it is true the said defendant Hot Springs Railroad Company presented the plaintiff a writing containing a full release to said ccompany from such damages, but plaintiff refused to make or sign such release; that at the time said writing was presented to him another writing was also exhibited to him, which was simply a receipt for money which had been paid to him by said company during the time he was disabled from work on account of said injuries as salary that had accumulated to him during such time; that it was customary for said company to allow the time of its employees who were disabled from work by injuries received while in the discharge of their duty to continue, and to pay such employee for such lost time without any deduction, and that said company paid plaintiff said salary during the time he was unable to work, and in that way said sums of $346.05 and $50 were paid to plaintiff, and the writing that plaintiff signed, or intended to sign, was the receipt for said money, and plaintiff says that if said company has any paper with his name thereto as that a copy of which is exhibited with said answer, his signature thereto was obtained by and through the fraudulent acts of Fred A. Bill, the agent and employee of said company, at the office of John M. Moore, in the city of Little Rock, in substituting said writing which he has refused to sign for the receipt which he had agreed to sign, and which he intended and believed he was signing.

Motions to strike this reply were overruled.

Upon the question of fraud in the execution of the release, the evidence of A. H. McMillan shows that he was notified by telegram from Mr. Bill, the superintendent of appellant Hot Springs Railroad Company, to be ready on specified time to go to Little Rock in company with Mr. Bill. At the appointed time Mr. Bill went to Malvern, where McMillan lived, and had McMillan accompany him to Little Rock and to the office of Mr. Moore, the attorney for said Hot Springs Railroad Company.

As soon as they entered the office of Mr. Moore, a paper was exhibited to McMillan by Mr. Moore which Mr. Moore stated they would like for McMillan to sign. McMillan read the paper, and it proved to be a release, the paper introduced in evidence, and, after reading it, McMillan refused to sign it, stating that he could not sign his rights away. Mr. Moore then told him there was no danger in signing the paper at all, that it was only a matter of form, of business, and it was not signing his rights away. After discussing the matter for a while in Mr. Moore's office, siting at a desk, Mr. McMillan got up, and went out of the room into the hall, and Mr. Moore followed him. Mr. Bill remained seated at the desk in Mr. Moore's office, while McMillan and Mr. Moore were out in the hall. After remaining in the hall awhile, McMillan went back into the room, and sat down at the desk where Mr. Bill was. Mr. Bill then showed McMillan a paper, which had a statement of the amounts paid to McMillan by the railroad company as a salary on the pay day of each month from the time McMillan was hurt up to that time, and asked McMillan to sign it, stating to him that it was a matter of form, and he wanted to send it to Mr. Morton, the president of the company, to show that everything was all right, and that McMillan had reported for work, and had gone back to work. The paper which Mr. Bill showed to him and requested him to sign was not the release which was introduced in evidence, and did not have anything in it about releasing the railroad company from damages on account of the injury. The paper which Mr. Bill requested him to sign, and which he thought he signed, was not the paper at all which was introduced in evidence. When McMillan signed the paper, he and Mr. Bill were sitting together alone by the desk or table. Mr. Moore was called by some one, and had stepped out. There were a lot of papers scattered around on the table at the time. McMillan did not intend to sign the release, and refused to do so, and thought he was signing the paper which Mr. Bill had requested him to sign, and which had nothing in it about releasing the railroad company, but it contained the amount of salary due him for all the time he was disabled from work on account of the injury, and all that had been paid him during such time. After McMillan signed the

paper which Mr. Bill requested him to sign, or what he thought was such paper, Mr. Moore came into the room, and saw the paper, and made a seal on it. Nothing had been said to McMillan about releasing the company at any time after the accident until he got to Mr. Moore's office in Little Rock, when he was requested to sign the release. The company paid him his salary regularly on each monthly pay day from the time of the accident up to the time he was in Mr. Moore's office, although he was not able to work. McMillan never made any agreement to release the company, and no money was paid to him at the time he signed the paper. The salary which accrued for the time McMillan was disabled from work up to the time he resumed work amounted to the sum of $346.05, and the $50 mentioned in the release. The $346.05 had been paid prior to signing the release, and the $50 were then due, but were paid at the next pay day. It was the custom of the Hot Springs Railroad Company to pay its employees regular wages during the time they were disabled from work by accidents occurring while such employees were in the discharge of their duty.

McMillan was badly injured. One of his hands was so badly crushed that amputation was necessary, and he was unable to do any work for several months. He had notified Mr. Bill, a few days before the trip to Little Rock, that he was able to resume work.

Mr. Bill's evidence shows that it was customary for the railroad company, when its employees were injured by accidents on the railroad while in the discharge of their duty, to procure from such employees a release to the company from all liability for damages on account of the accident, before allowing the employees to resume work. On receiving notice from McMillan that he was able to return to work, Mr. Bill planned and carried out the trip with McMillan to Little Rock in order to get the release.

After hearing the evidence and the instructions of the court, the jury returned a verdict in favor of McMillan for $5,000, and judgment was accordingly entered.

Subsequently defendants filed a motion for a new trial, based upon newly discovered evidence. Mr. J. C. Fox made affidavit as follows:

"Some time during the year 1900, I think in the early fall, I went to the Iron Mountain depot early in the morning, and saw A. H. McMillan standing on the Iron Mountain side of the depot, dressed up, and inquired of him where he was going. McMillan stated that he had a telegram from Fred A. Bill, the auditor of the Hot Springs Railroad, and he read the telegram to me, which stated in substance that he (Bill) would be over on the first morning train from Hot Springs, and desired McMillan to meet him, and go with him to Little Rock on No. 4 of the Iron Mountain road. On the following morning, or the second morning afterwards, I am not sure which, as I was coming from my home, I met A. H. McMillan on the north side of the court square, and asked him what he did in Little Rock. I had an idea that he had gone to Little Rock for the purpose of making some settlement with J. M. Moore, the attorney of the company, and for that reason asked him the question. He stated that he compromised the matter with the company upon the payment to him of a little over three hundred dollars, and signed a release releasing the company from all claims on account of his injuries. He also stated to me in that connection that the company agreed to employ him for a period of six months. I believe that was the number of months he said. I know he stated a limited number of months, and I am sure it did not amount to the period of a year; but stated that he understood that they would keep him in their employ so long as he was able to work. I was present at the trial of the case of A. H. McMillan against the Hot Springs Railroad Company at the August term, 1903, of the Hot Springs Circuit Court, and heard a good part of the evidence, and after the trial was over and court had been adjourned for the term, in conversation with W. B. Smith, an attorney of the railroad company, I told him that McMillan did sign this release which he denied signing at the trial, because McMillan had so stated to me immediately after his return from Little Rock. This was the first time that I had ever made the statement to any one connected with the road; in fact, I had not

considered it of any importance, and had not thought of it for some time until my memory was refreshed by the incidents of the trial. If I had thought the matter of importance, or appreciated its importance, I should have called the attention of either Mr. Smith or Mr. Bill to the fact during the trial. The railroad company had no way of ascertaining my knowledge of this fact until I voluntarily told them of it."

The plaintiff, to maintain the issues on its part, read the following affidavit of S. H. McMillan:

"S. H. McMillan says that he is a brother of A. H. McMillan, the original plaintiff in this case, who is now dead; that said A. H. McMillan died some time in the fall of 1903, and after the trial of this case at the August term of this court; that during the trail of said case Joe Fox, who has filed the affidavit supporting the motion for new trial, was present all the time and was in attendance at the court house all the time while the trial was progressing; that said Fox at the time said A. H. McMillan was injured, and for which he sued in this action, was roadmaster for the Hot Springs Railroad Company, which position he held until said road was sold and transferred to the Choctaw, Oklahoma & Gulf Railroad Company; that as such roadmaster the said Fox had general supervision and control of the men who kept said road in repair and in proper running condition, and the section bosses, or bosses of the section houses, were under him; that the said Fox as a rule assisted in looking up evidence and preparing cases for trial that were brought against the Hot Springs Railroad Company for any cause, and he was present at the trial of this case for that purpose, and had been doing that all the time he was roadmaster for said company, and that said Fox held said position for a number of years."

Defendant in rebuttal read the following additional affidavit of J. C. Fox:

"J. C. Fox states on oath: That, while it is true he was in attendance upon the August term, 1903, of the Hot Spring Circuit Court, and was present during the trial of the case of A. H. McMillan against the Hot Springs Railroad Company, and heard most of the evidence, he was not in attendance at the

instance of the Hot Springs Railroad Company, and did not assist the attorneys and representatives of that company in the preparation of the evidence, or advise or confer with them in regard to the case; that he was not at that time in the employ of the Hot Springs Railroad Company, or its successor, the Choctaw, Oklahoma & Gulf Railroad Company, in any capacity, and had not worked on said road since some time during the month of July preceding; that he was not roadmaster of the Hot Springs Railroad Company in February, 1900, when A. H. McMillan was injured; that he relieved Col. Richardson as roadmaster some time during the spring of 1900 temporarily, and did not become roadmaster of the company permanently until September, 1900; that he was serving as extra section foreman at the time of McMillan's injury; that it was never his duty to look up evidence for the company and assist in preparing cases for trial that were brought against it, and he does not remember ever having done so; that he was not requested to, and did not, look up evidence in the case of A. H. McMillan, or assist in the preparation of the case for trial, either while he was in the employ of the company or after he had severed his relations with the company; that the motion for new trial filed by the Hot Springs Railroad Company had been overruled, and the court adjourned when he had the conversation with W. B. Smith, as sworn to in his original affidavit filed herein, and the said W. B. Smith was at the time preparing to leave for Little Rock; that he was not supœnaed or used as a witness in said case."

After the judgment was rendered, and before the motion for new trial was disposed of, plaintiff died, and the case was revived in the name of Martha A. McMillan, as his administratrix. The motion for new trial was overruled, and defendants have appealed.

*W. B. Smith, E. B. Pierce* and *T. S. Buzbee,* for appellants.

There was no fraud in the execution of the release, which was a complete bar to the action. 36 L. R. A. 442; 46 Ark. 220; 91 Fed. 606; 65 Fed. 461. A new trial should have been granted upon the ground of newly discovered evidence. Kirby's Dig.

§ § 6215-6220. A compromise of a disputed claim is sufficient consideration to support a.promise to pay the sum agreed upon. 21 Ark. 69; 44 Ark. 559; 68 Ark. 82. There was no liability upon the part of the Choctaw, Oklahoma & Gulf Railroad Company. 74 Ark. 366; 68 Ark. 171.

*Wood & Henderson,* for appellee.

The release introduced was not binding upon McMillan. 17 Ark. 498; Bish. Contr. § 645; 158 U. S. 326; 76 Fed. 66; 90 Fed. 395; 95 Fed. 360; 64 N. E. 304; 54 Atl. 332; 58 S. W. 735; 41 S. W. 126; 73 Ark. 42. McMillan was not guilty of contributory negligence. 48 Ark. 333; 53 Ark. 458; 56 Ark. 232; 70 Ark. 295; 14 Fed. 277; 78 L. R. A. 845; 41 L. R. A. 399; 16 Am. Neg. Rep. 351. The question of granting a new trial was discretionary with the court. 14 Enc. Pl. & Pr. 982; 54 Ark. 370; 41 Ark. 229.

WOOD, J. First. It is conceded by the learned counsel for appellants that the question of whether or not there was fraud in the execution of the release was submitted to the jury upon proper instructions, but it was ably contended in oral argument, and in brief, that the evidence on this issue was not legally sufficient to support the verdict.

We have carefully examined the record on this question of fact, and have reached the conclusion that there was evidence to support the verdict. We do not hesitate to say that, were it the province of this court to pass upon the weight of the evidence and the credibility of witnesses, we would find in favor of appellants on the question of the execution of the release. But, according to the rule long ago established by this court, since followed, and recently approved in many cases, it is the exclusive province of the jury to determine disputed questions of fact. 1 Crawford's Dig., Appeal & Error, VIII, e; *St. Louis Southwestern Ry. Co.* v. *Byrne,* 73 Ark. 377; *St. Louis, I. M. & S. Ry. Co.* v. *Wilson,* 70 Ark. 136; *St. Louis & S. F. Ry. Co.* v. *Kilpatrick,* 67 Ark. 47; *Catlett* v. *Railway Company,* 57 Ark. 461.

The testimony of McMillan certainly tends to establish the allegations of his reply to the answer of the Hot

Springs Railroad Company on the subject of the release. While his testimony in regard to the preparation and execution of the release is contradicted in every material essential by the positive testimony of witnesses for appellants, and while the testimony of McMillan on this question appears to us to be inherently weak and contradictory, yet, unless we overturn a long line of decisions of this court, we must hold that all these were matters for the jury to settle; and, as they were properly instructed, their decision is final.

Second. The court, over the objection of appellants, permitted the plaintiff to testify in regard to the custom of the Hot Springs Railroad Company to continue the wages of its employees while they were disabled from work on account of injuries received in the service. This testimony was proper. Appellee was contending that the purported release was fraudulent. It recited a consideration of $346.05 as paid, and $50 in addition to be paid. These recitals conveyed the impression that the railway company had paid and was to pay the amounts named as part consideration for the execution of the release. Proof that these recitals were false, by showing that these amounts were already due him, according to the custom of the company in dealing with its disabled employees, certainly tended to establish the contention of appellee that the alleged release was fraudulent, and that when he signed same he did so under the impression that he was signing a receipt for money due, and which the company had paid according to its custom, and not as a part consideration for a release.

The testimony was germane to the contention of appellee as to the fraudulent execution of the release. Moreover, appellants have nowhere denied that such was the custom, and they do not now contend, as we understand, that the $346.05 and the $50 were paid as part consideration for the execution of the release. Therefore we do not discover any possible prejudice to appellants by the introduction of the testimony.

Third. The alleged negligence of the appellant Hot Springs Railroad Company in failing to exercise ordinary care to provide McMillan safe appliances, and the alleged contributory

7

negligence of McMillan in failing to exercise ordinary care in the use of the appliances furnished him, were questions of fact properly submitted to the jury, and their verdict is supported by legally sufficient evidence.

Fourth.  It was within the sound discretion of the trial court to refuse the motion for new trial setting up newly discovered evidence.  *Anderson* v. *State*, 41 Ark. 229; *Armstrong* v. *State*, 54 Ark. 370; *Mutual Life Ins. Co.* v. *Parrish*, 66 Ark. 612; *St. Louis S. W. Ry. Co.* v. *Byrne*, 73 Ark. 377.

We find no abuse of the court's discretion in this case.  On the contrary, we think it was properly exercised.

Fifth.  The contention that the court erred in rendering a personal judgment against appellant, Choctaw, Oklahoma & Gulf Railroad Company, was not made a ground of the motion for new trial.  Such question will not be considered here for the first time.

Affirmed.