## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. BROWN.

Opinion delivered November 12, 1904.

1. RELEASE—INCAPACITY TO CONTRACT.—A release of personal damages signed by a person at a time when, by reason of his physical injuries and of the whisky which had been administered to him, he was incapacitated to contract, will not be binding upon him. (Page 45.)

2. SAME—REPUDIATION—REFUNDING MONEY.—If a release be obtained from a person by fraud and circumvention at a time when he was incapable of contracting, and money was paid to him at the time of its execution, he may repudiate the release and bring his action, without tendering back the money received. (Page 45.)

Appeal from Clark Circuit Court.

JOEL D. CONWAY, Judge.

J. R. Brown sued the St. Louis, Iron Mountain & Southern Railway Company for injuries received by him as a passenger in a collision. Defendant answered, denying negligence and setting up a release. Plaintiff recovered a verdict in the sum of $50, from which defendant has appealed. The facts are stated in the opinion.

*Dodge & Johnson,* for appellant.

Acceptance of money in settlement of a disputed claim is binding, and cannot be rescinded for fraud unless the money be first returned.   62 Ark. 78; 62 Ark. 347; 59 Ark. 259; 17 Ark. 240; 117 Mass. 479.

*John E. Bradley,* for appellee.

The evidence is sufficient to support the verdict.   100 N. Y. 170; 2 Am. Neg. Rep. 427; 6 Wash. 202; 158 U. S. 326; 105 Ill. 63.

WOOD, J.   The question as to whether or not the release set up by appellant was a valid contract, and therefore binding on the appellee, was a question for the jury under the evidence, and this question was submitted under proper instructions.   At least, no objection is raised here to the instructions, and we therefore treat them as correct.   Appellant only insists here that there was no evidence to support the finding that the release was not a binding contract.   There was evidence tending to show that the appellee at the time he signed the release did not have sufficient mental capacity, on account of his physical injuries and sufferings and the effect produced by these and the whisky he had taken, to understand and appreciate the contents of the paper which he signed.   The circumstances under which appellee signed the purported release would justify a finding by the jury that an unfair advantage was taken of appellee, and that the procuring of his signature under the circumstances was a fraud which would vitiate the contract.

The rule is to scrutinize releases of this kind with great care. What was said by Chief Justice Dunbar in *Penderson* v. *Seattle Consolidated St. Ry. Co.,* 6 Wash. 202, 7 Am. Neg. Cases, in his dissenting opinion, is very applicable here.   Says he: "While this man was lying there mangled and shocked by the injury, before his wounds were dressed or his mind composed, the agents of the company obtained this so-called release." Continuing, he says: "A contract is only entitled to respect from the presumption that the contracting parties were standing on an equal footing at the time the contract was entered into.   Will any man assert that the parties to this action were on an equal footing

at the time this contract was entered into? Here was a man without means and without friends, torn and bruised by an accident, and jolted and shocked until he was prostrated; his wounds not yet examined to ascertain if they were fatal, racked with physical pain and scared out of his wits by the misfortune that had overwhelmed him; and while in this condition, a condition of mind and body absolutely preventive of intelligent calculation, the company with unseemly haste thrust this cold, calculating stipulation into his face and obtained his signature to it. The essence of a contract is an agreement of the minds of the parties, or the consent and harmony of their intentions. The circumstances under which the respondent's signature was obtained to the so-called release show, indeed, no want of harmony; there was but one mind operating—the mind of the respondent was plainly in no condition to agree to anything; and appellant should not be allowed to shelter itself behind an instrument obtained in such a way." So say we, taking the most favorable view of the evidence for appellee.

The plaintiff himself, in giving an account of his condition and surroundings, said:

"I was sitting on the third seat from the back in the colored coach when it happened. It happened like a clap of thunder, all at once. Everybody was gone. It covered every body up, and cut my legs. They were dead. I could not move. I fainted, and did not know anything for quite a while; thought once I was dead, and passed into another world. I could see no one, but sat there, with my mind going and coming, suffering with pain in my legs. The skin was peeled off, like one scalded with hot water. I did not know where I was until 3 o'clock in the morning; stayed in the coach where I had been removed. Whisky was given to us three times before I signed the paper. The whisky flew to my head, and I did not have a good mind, and did not have for four days. I suffered great pain. My legs were cut and bleeding then, and other people were in the car suffering, moaning, howling; some with broken legs, broken arms, broken thighs, and some killed. The whole thing was a regular moaning. The car doors were locked while they were in there paying off. Nobody in there except the wounded."

There was other evidence tending to corroborate appellee as to the conditions prevailing when the release was obtained.

In *Chicago, R. I. & P. Co.* v. *Lewis,* 109 Ill. 120, it is said: "If a person, while under the influence of opiates to such an extent as to be incapacitated to contract, is induced to execute a release of damages for personal injuries, it will not be obligatory upon him, and will be no defense to an action brought by him." Of course, the same may be said of incapacity produced by liquor or any other agency. If the releasee takes advantage of such a condition to have the so-called release executed, he is guilty of a fraud. 24 Am. & Eng. Enc. Law (2d Ed.), 315, and cases cited.

Money paid to a party as a consideration for a release does not have to be tendered or refunded, to enable such party to bring and maintain his suit, where it is shown that at the time the money was paid him and the release was executed he was incapable of making a contract, and that by fraud and circumvention or imposition he was induced to sign a paper of whose contents and character he was ignorant. *C., R. I. & P. Ry. Co.* v. *Lewis,* 109 Ill *supra.*

This is not like the cases of *Harkey* v. *Ins. Co.,* 62 Ark. 274, and *St. Louis Southwestern Ry. Co.* v. *Selman, Id.* 347.

Affirm.

Battle, J., dissents.