ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* SMITH.

Opinion delivered February 4, 1907.

1. ACTION—ABATEMENT—PENDENCY OF SUBSEQUENT SUIT.—The fact that the plaintiff in an action at law to recover personal damages brought a second suit in equity to cancel a writing purporting to be a release of such damages is not ground for abating the action at law, and cannot be urged as a bar thereof. (Page 109.)

2. WRITING FILED WITH PLEADING—PRESUMPTION.—Kirby's Digest, § 3108, providing that "where a writing purporting to have been executed by one of the parties is referred to in, and filed with, a pleading, it may be read as genuine against such party, unless he denies its genuineness by affidavit before the trial is begun," raises a *prima facie* presumption of genuineness of a writing so filed, but does not deny the other party the right to contest the genuineness thereof unless he first files an affidavit denying its genuineness. (Page 109.)

3. CONTINUANCES—DISCRETION.—The granting of postponements and continuances is within the sound discretion of the trial court. (Page 110.)

4. SAME—WHEN NO ABUSE OF DISCRETION SHOWN.—No abuse of discretion is shown in overruling a motion for a postponement upon the ground that appellant was surprised at the court's ruling in overruling a certain plea, nor where appellant made no showing that he would be beter prepared for trial at a later date. (Page 110.)

5. INSTRUCTIONS—INCOMPLETENESS.—It is no objection to an instruction that it does not contain all the law of the case if it contains a correct statement of the law, and does not, directly or by fair implication, make the verdict depend entirely upon the proposition stated, and exclude other questions in issue. (Page 111.)

6. RELEASE—RESCISSION—REFUNDING MONEY.—Where a release was obtained by fraud, there is no requirement that the consideration of the release should be refunded by the party seeking to rescind it until the fraud has been discovered by him. (Page 111.)

7. RELEASE—FRAUD.—One who is induced by the fraud of another's agent to sign a release without reading it is not bound thereby. (Page 113.)

8. TRIAL—IMPROPER ARGUMENT.—An improper argument will not be deemed prejudicial where its only injurious effect would have been to enhance appellee's damages, if appellant does not complain that the verdict was excessive. (Page 115.)

9. SAME—CONSTRUCTION OF COUNSEL'S ARGUMENT.—A statement of appellee's counsel as follows: "I want you gentlemen to fix such a sum as will be commensurate with the negligence" will not be construed

as inviting the jury to award damages in excess of compensation where the court's instructions had limited them to that amount. (Page 116.)

Appeal from Cross Circuit Court; *Allen Hughes,* Judge; affirmed.

### STATEMENT BY THE COURT.

This action was instituted in the Cross Circuit Court by the plaintiff, Mary J. Smith, against the defendant, St. Louis, Iron Mountain & Southern Railway Company, to recover damages for personal injuries alleged to have been sustained by reason of a collision between two trains on defendant's road, on one of which plaintiff was a passenger. Negligence of defendant's servants is alleged to have caused the collision. The defendant filed its answer containing two paragraphs, in one of which it denied all the material allegations of the complaint, and in the other it pleaded a settlement in full with plaintiff and a written release of liability signed by plaintiff, and which was filed with the answer.

During the pendency of the action and before trial, the plaintiff commenced a suit against the defendant in the chancery court of Cross County, setting forth in her complaint the same matters and things alleged in the complaint at law, and also alleging that the defendant, through its claim agent, had by false and fraudulent representations procured said settlement with plaintiff, and praying that said written release purporting to have been executed by plaintiff be cancelled. When the action at law was called for trial, the defendant filed a motion to abate the action, setting forth the pendency of the suit in equity, and that defendant had filed an answer and cross-complaint seeking to restrain the plaintiff from further prosecution of the action at law. This motion was overruled, and the defendant excepted.

A trial of the case before a jury resulted in a verdict in favor of the plaintiff in the sum of $5,000, judgment was entered accordingly, and the defendant appealed.

There was no serious controversy in the trial as to the negligence of the defendant's servants which caused the collision and the injury to plaintiff in consequence thereof. The only material controversy was as to the extent of the injury and the validity of the settlement with plaintiff and the release alleged to have been executed by her.

The defendant introduced in evidence a written instrument purporting to have been signed by the plaintiff, reciting in detail the plaintiff's injury in consequence of the collision and releasing the defendant from all further liability in consideration of the sum of seventy-five dollars paid to her by defendant.

The plaintiff denied that she signed the instrument or that she had ever seen it before it was shown to her while on the witness stand. She denied also that she had ever signed any paper or release of any kind to defendant. Her daughter, whose name appeared subscribed to the instrument as witness, testified that she had never signed the paper.

The plaintiff testified further that the defendant's claim agent visited her at her home shortly after the injury and proposed to pay her $75 for the delay and inconvenience on account of the interruption of her journey, and that she accepted it, and that the agent told her at the time that the payment was not for her personal injuries, but that she could put in a claim against the company for compensation for them. Her statements concerning the transaction with the claim agent are as follows:

"He came Monday evening, after I landed there Saturday night. He came to the fence, and I was lying down. Came and asked me if I was Mary J. Smith. I said I was, and he stated that he had come to pay me money for laying over. I said it wasn't enough. He said it wasn't for my hurt. He said he had given them all that much. I thought if they were all getting that I could take it too. But said I wouldn't take it for my hurt, and he said it wasn't for that. He said I could put in my claim for that. Said I could put in five claims if I wanted to. For me to go and see a doctor, and see how bad I was hurt, and to put in my claim for that. He said he was sorry for me, and that he was working for me—that he had a widowed mother in Little Rock. There was no one else in the house when he came but a little child. He asked if I had anybody about the place, and I went and called my daughter. She was working near the house and came in. He asked her to sign a paper, and she signed it. When he stepped out, she asked me what she had signed it for, and I said he paid me $75."

The defendant introduced the claim agent as a witness, who denied the statements of plaintiff, and testified that she signed

the release and accepted said sum of $75 in full payment of all claim against the company for damages. Other witnesses were introduced who testified, by comparison with plaintiff's genuine signature, that the signature to the written instrument appeared to be that of plaintiff's.

The defendant moved the court to exclude all of plaintiff's testimony tending to impeach the written release, which motion was overruled, and exceptions were duly saved.

*B. S. Johnson* and *J. E. Williams,* for appellant.

1. The court erred in refusing to abate this suit, or continue it, pending the decision of the chancery suit. 45 Ark. 192; 34 Ark. 410; 14 Ark. 666; 36 Ark. 513; 24 Ark. 272.

2. It was error to permit the plaintiff to contest the genuineness of the release filed by appellant as a part of its answer without first having denied its genuineness by affidavit before the trial was begun. Kirby's Digest, § 3108; 34 Ark. 622.

3. After the plea in abatement was overruled, the appellant should have been granted a continuance on the ground of surprise, in order to enable it to meet an issue which it had not been advised it would have to meet. 67 Ark. 142. See, also, 55 Ark. 163.

4. The court erred in giving the first and second instructions asked for by plaintiff with no allusion therein to the issue in regard to the settlement, whereby the jury were in effect invited to ignore the defense in the case and look simply to the collision itself and the measure of damages. 53 Ark. 130; 60 Ark. 613; 71 Ark. 38.

5. The court erred in refusing the fourth and sixth instructions asked for by appellant, and in modifying and giving them as modified. 59 Ia. 416; 13 N. W. 429; 67 Ia. 547; 25 N. W. 772; 75 Md. 162; 23 Atl. 307; 50 Ark. 397; 19 Am. & Eng. Ry. Cas. 224; 46 Ark. 217; 62 Ark. 342.

6. Before being permitted to recover, appellee should have tendered back to the appellant the money she had received by way of settlement and the court erred in refusing to give instructions to that effect. 83 Ga. 558; 62 Ark. 274; *Id.* 347; 117 Mass. 479; 17 Ark. 240.

7. The case should be reversed because of improper argument of appellee's attorney and the court's approval thereof in

the presence and hearing of the jury, the effect of which was to permit the jury to return a verdict, not for such sum as would compensate appellee for her injuries, but "commensurate with the negligence in placing these trains on the track," etc. 53 Ark. 7; 70 Ark. 136; 61 Ark. 137; 65 Ark. 626; 48 Ark. 131; 69 Ark. 656; 70 Ark. 184; *Id.* 306; 72 Ark. 427; 74 Ark. 256; 76 Ark. 366.

*Smith & Smith* and *Lamb & Caraway*, for appellee.

McCULLOCH, J., (after stating the facts.) 1. The court did not err in overruling appellant's motion to abate the action at law to recover damages because of the pendency of the chancery suit. The plaintiff could maintain the action at law, notwithstanding the written release, if it was obtained by fraud. It was unnecessary to sue in equity to cancel the release. *George v. St. Louis, I. M. & So. Railway Co.*, 34 Ark. 622; *Springfield & Memphis Ry. Co. v. Allen*, 46 Ark. 217; *Hot Springs Railroad Co. v. McMillan*, 76 Ark. 88; *St. Louis, I. M. & S. Ry. Co. v. Brown*, 73 Ark. 42; *Union Pacific Ry. Co. v. Harris*, 158 U. S. 328; *Chicago, R. I. & P. Ry. Co. v. Lewis*, 109 Ill. 120. Her right to sue at law to recover for the injury and to show that the release was procured by fraud being complete, the fact that she had instituted a suit in equity to cancel the release did not abate the action at law nor bar her right to proceed to trial of the action.

Nor did the pendency of the suit in equity or the cross-complaint filed therein by appellant oust the jurisdiction of the law court to proceed with the trial of the action previously instituted therein. No injunction was issued upon the cross-complaint restraining appellee from prosecuting the action at law, and that can not be urged as a bar.

2. Did the court err in permitting the plaintiff to contest the genuineness of the release filed with defendant's answer without having filed the affidavit provided by law?

The statute relied on by appellant as denying the right is as follows: "Where a writing, purporting to have been executed by one of the parties is referred to in, and filed with, a pleading, it may be read as genuine against such party, unless he denies its genuineness by affidavit before the trial is begun." Kirby's Digest, § 3108. We do not think this statute can be construed to deny a party the right to contest the genuineness of

an instrument filed with the pleadings unless he first files an affidavit denying its genuineness. It means only that, in the absence of such an affidavit, the party offering the instrument may introduce it without proof of its execution, and that it is taken *prima facie* as genuine, but its genuineness may be contested. In other words, the statute merely establishes a rule of evidence, and does not bar the opposite party absolutely of his right to contest its genuineness, nor does the failure to deny its genuineness by affidavit give it the force of absolute verity. Where such an instrument is pleaded in a complaint, its genuineness is not in issue unless denied in the answer; but the pleading of such an instrument in the answer by way of defense does not call for a reply from the plaintiff. He may, by failing to file the necessary affidavit, permit it to be read as *prima facie* genuine and then introduce evidence contesting its genuineness.

Counsel for appellant rely upon the case of *George* v. *St. Louis, I. M. & S. Ry. Co.,* 34 Ark. 613, as sustaining their contention. In that case the court, in deciding that where the defendant's answer set up a written release the plaintiff was not entitled to reply under the Code of Practice, said: "He should have filed the affidavit before the trial, impeaching the release pleaded by the second paragraph of the answer and filed with it." But the court did not hold that the affidavit must be filed in order for the defendant to have the privilege of impeaching the instrument.

3. It is next contended that the court erred in refusing to postpone the trial on the ground of surprise to appellant, after overruling the plea in abatement. Such matters are within the sound discretion of the court and, unless there has clearly been an abuse of the discretion, this court will not reverse on account of the ruling of the lower court. *Harper* v. *State,* 79 Ark. 594, and cases cited. There was no abuse of the court's discretion in this instance. No grounds were shown for the continuance except the surprise at the ruling of the court in overruling the plea. For aught the record shows, unpreparedness of appellant for trial at that time was due solely to the misapprehension of its counsel as to what the ruling of the court would be upon the plea in abatement. As we have held that the court ruled correctly on that plea, the ruling afforded no just ground

for surprise. Appellant made no showing to the court that it would be better prepared for trial at a later day.

4. The giving of two instructions at the request of plaintiff, one upon the measure of damages in the event of finding for plaintiff, and the other upon the question as to what would constitute negligence on the part of defendant in permitting the two trains to collide, are assigned as error because neither of the instructions contained any allusion to the issue in regard to the validity of the release. Other instructions were given covering that question at the instance of appellant. Each instruction can not contain all the law of the case. It is sufficient if an instruction, otherwise containing a correct statement of the law, does not, directly or by fair implication, make the verdict depend entirely upon the proposition stated, and exclude other questions in issue. *Pacific Mutual Ins. Co.* v. *Walker,* 67 Ark. 147; *North Arkansas & Western Railway Co.* v. *Cole,* 71 Ark. 38; *Little Rock Ry. & Electric Co.* v. *Dobbins,* 78 Ark. 553.

Appellant asked the court to give instructions, which were refused, to the effect that if plaintiff received a sum of money from appellant's agent in settlement of her claim for damages she could not maintain the action without first tendering back the sum so received. The instructions were properly refused. In the first place, they were erroneous because they entirely ignored the plaintiff's contention as to the circumstances under which the money was paid and the purpose for which it was paid. She testified that the claim agent paid her the money as compensation for her delay and inconvenience on account of the collision, and with the express understanding that it was not to affect her claim of compensation for personal injuries. The instructions entirely ignored the claim of fraud and deception alleged to have been practiced, and the question whether or not the plaintiff had discovered the fraud before the commencement of the action. There would be no justice in a rule of law which would cause the plaintiff's action to fail because she had not tendered back money which she had accepted for another purpose, and where she did not know of the fraud practiced upon her until after the commencement of the action.

In the case of *St. Louis, I. M. & S. Railway Co.* v. *Brown,* 73 Ark. 42, we said: "Money paid to a party as a consideration

for a release does not have to be tendered or refunded to enable such party to bring and maintain his suit, when it is shown that at the time the money was paid and the release was executed he was incapable of making a contract, and that by fraud and circumvention or imposition he was induced to sign a paper of whose contents and character he was ignorant." To the same effect see *Harkey* v. *Mechanics' & Traders' Insurance Co.*, 62 Ark. 274.

This statement of the law, to be applicable to the facts of this case, is subject to the modification that, even though the party is capable of entering into a contract, if the contract is procured by fraud and circumvention, there is no requirement that the money should be refunded until the fraud has been discovered.

It is not claimed in this case that the plaintiff was incapable of making a valid contract. On the contrary, she claims that she did make a settlement with defendant's agent of a portion of her damages, and that he paid her the sum of seventy-five dollars therefor. But she denies that she made a settlement with reference to compensation for her personal injuries, or that she signed a written release. Of course, if she accepted a sum, however small, as compensation for her personal injuries, or if she had signed the written release with a full knowledge of its contents, she could not recover at all, whether she offered to return the money or not, for a contract, fairly entered into, for the settlement of an unliquidated claim for damages would bar the right to recover more. So, if the jury found that she was paid the sum of money as compensation only for the inconvenience and delay caused by the collision, or that she was induced to sign the receipt by false representations, which she relied on, as to its contents, she would not be bound to return the sum paid before suing to recover the damages sustained.

The case of *Bliss* v. *New York, etc., R. Co.*, 160 Mass. 447, was somewhat similar to this. There the plaintiff was injured in a wreck on defendant's road, and sued for physical injuries. At trial the defendant produced a written release executed by plaintiff immediately after the wreck of all liabilities for injuries of all kinds in consideration of the sum of $17 paid. The plaintiff testified that he was conducted to the office of the superintendent of the road where he was offered the sum of $17 as payment for

damage to his trousers and hat, and that nothing was said about his personal injuries; that he accepted the offer and signed the receipt without reading it, upon the assurance given him by defendant's agent that it only concerned the damage for loss of his trousers and hat. This was denied by the agents of defendant, but the jury found in favor of his contention, and the Supreme Court sustained the verdict, and held that he was neither bound by the release nor bound to refund the sum paid to him. The court said: "If it was understood at the time that the payment was received only for the injury to his clothing, and that no claim for personal injury was settled for or released, and if the release and receipt were by fraud so phrased as to cover the claim also, and if they are avoidable by reason of the fraud so far as the claim for personal injury is concerned, the plaintiff was under no obligation to return the money received by him for the injury to his clothing upon bringing his action for the personal injury."

To the same effect see *Mullen* v. *Old Colony R. Co.,* 127 Mass. 86; *Chicago, R. I. & P. Ry. Co.* v. *Lewis,* 109 Ill. 120. In the last cited case the court said: "On principle, an instrument absolutely void needs not to be rescinded to remove it out of the way of the assertion of a right. It is for the obvious reason that it never had any binding force, and there was therefore nothing to rescind. A contract void on account of fraud, or for any other reason, is, in law, as though it had never been executed."

The defendant asked two instructions, numbered four and six respectively, which the court modified, over defendant's objection. The instructions as given are as follows, the modification being in italics:

"No. 4. If the plaintiff was able to read the contents of the release or written contract of settlement in question, and neglected to do so, and signed the same without reading it, then in that event such instrument would operate as a discharge of the defendants, although the plaintiff may not have understood or known its contents by reason of such failure to read the same. *But if she did sign the release, and did not know what it contained, and Mansfield told her that it only included and covered her delay, inconvenience and expense for a medical examination, and not damages for her actual injuries and pain and suffering,*

*and she relied upon and believed such statements, and signed the
release under such belief, then the release, of itself, would not
bar a recovery."*

"No. 6. If the release or contract of settlement in question
was read over to plaintiff, or if its contents were stated in sub-
stance to the plaintiff, even though not stated in exact language
therein contained, and the plaintiff received $75 or any other
substantial sum in satisfaction of her claim aganst the defend-
ants, *for her actual physical injuries and pain and suffering re-
sulting therefrom, if any,* in either event the plaintiff can not
recover, although she may not have signed the instrument or
paper writing in question."

Error of the court is assigned in refusing to give these in-
structions as asked by the defendant, and in modifying them.

We doubt that the court ought to have given any instruction
at all submitting the question whether the plaintiff signed the
release without having read it and without knowledge of its
contents. Neither party claimed the existence of such a fact.
The plaintiff testified that she did not sign a release at all, and
that she received payment only for the delay and inconvenience.
The defendant's agent testified that she did sign the release with
full knowledge of its contents. This was the issue between them,
and the jury could only have found, either that she was bound
by the release because she signed it, or that she was not bound
by it because she did not sign it. But appellant invited the sub-
mission of that issue to the jury, and can not therefore complain.
The instructions asked, without the modifications, were not cor-
rect, and the court was right in making the modifications, if they
were to be given at all.

It was not correct to say that plaintiff was bound by the
writing, even without knowledge of its contents, if she failed to
read it over. If she was induced, on account of reliance on the
false statements of the agent, to sign it without reading it, she
was not bound by it. The fraud of the agent, if he in fact mis-
represented its contents, vitiated it. *Union Pac. Ry. Co.* v. *Har-
ris,* 158 U. S. 328; *Chicago, R. I. & P. Ry. Co.* v. *Lewis,* 109 Ill.
120; *Mullen* v. *Old Colony R. Co.,* 127 Mass. 86.

This court said in *St. L., I. M. & S. Ry. Co.* v. *Weakly,*
50 Ark. 397, which is relied on by appellant's counsel as sus-

taining their contention, that a party would not be relieved from a contract which he had signed by mistake without reading it or having it read unless it was procured by fraud or imposition. We are not aware of it ever having held that a party whose signature to a written instrument has been procured by fraud or circumvention is bound by it simply because he signed without reading it over. We find no prejudicial error in the giving or refusal of instructions.

5. The next assignment of error is as to alleged improper argument of plaintiff's attorney. One of plaintiff's attorneys, in his opening argument to the jury, referring to the movement of trains which caused the collision, said: "It is the worst form of negligence that could be imagined, and I want you gentlemen to fix such sum of money that would be commensurate with the negligence in placing these trains on the track and permitting them to collide." Upon objection being made by appellant's counsel to the statement, the trial judge replied in the presence of the jury: "I think that argument is entirely proper, and the objection is overruled."

It is said that the argument was improper because it was in effect an appeal to the jury to measure the plaintiff's damages by the degree of negligence of defendant's servants, regardless of the amount of compensation she was entitled to for her injuries; and that the trial court, by its ruling, gave its approval as a correct statement of the law. This court has not hesitated about reversing cases on account of improper remarks of counsel appealing to the passion or prejudice of the jury, or containing erroneous statements of the law or stating facts which have not been established by evidence, where it appears that the cause of the opposite party has been prejudiced thereby. *Kansas City So. Ry. Co.* v. *Murphy,* 74 Ark. 256, and cases cited; *Cogburn* v. *State,* 76 Ark. 110. In *Kansas City So. Ry. Co.* v. *Murphy,* the court, after reviewing the cases on this subject, said: "In the final analysis, the reversal rests upon an undue advantage having been secured by argument which worked a prejudice to the losing party not warranted by the law and facts of the case." Now, the only improper effect which this argument of counsel could have had was to augment the amount of the verdict, and learned counsel for appellant do not complain here of the verdict in

respect to the assessment of the damages. On the contrary, they frankly admit that practically the only matter in dispute before the jury was that of the validity of the release of liability alleged to have been executed by the plaintiff. This being true, we do not think we should reverse the case on account of the argument, even if we concluded that it was erroneous and embraced an incorrect statement of the law, where no prejudice resulted.

But, aside from this, we can not, under the circumstances of this case, believe that the argument of counsel and the statement of the court with reference thereto misled the jury as to the law of the case, or operated to the prejudice of appellant. As before stated, the only improper effect it could possibly have had was to mislead the jury as to the measure of damages, and to induce in their minds a belief that, if the negligence of defendant was especially gross, they could assess damages in excess of what would be a fair compensation to the plaintiff for the injuries sustained. The court had, however, correctly instructed the jury as to the measure of damages, limiting the assessment to compensation for the plaintiff. We can not believe that the jury understood from this argument and its approval by the court that they could, in the face of the instruction given by the court, allow damages in excess of compensation.

It will be observed that the attorney did not state to the jury that the instructions given by the court warranted an assessment of damages in excess of compensation to the plaintiff, nor that the law warranted such an assessment. He said: "I want you gentlemen to fix such sum as will be commensurate with the negligence." The statement, considered as the appeal or argument of an advocate to the jury, is not in express conflict with the instruction previously given by the court on the measure of damages, and we do not think that under the circumstances the language of counsel and court is fairly susceptible of a construction which puts it in conflict with the instruction on the measure of damages, or that the jury could have understood it to mean what appellant contends it did mean.

We find no prejudicial error in the record, and the judgment is affirmed.

WOOD, J., (dissenting.) The argument of counsel was highly

prejudicial, and the approval of same by the court, after its attention was called to same, was tantamount to an instruction to the jury to the effect that the damages might be awarded as counsel desired. It is difficult to imagine a more erroneous and prejudicial argument. It was utterly foreign to the law, and wholly in conflict with the other instruction which the court gave correctly defining the measure of damage.