St. Louis, Iron Mountain & Southern Railway

Company *v.* Reilly.

Opinion delivered November 17, 1913.

1.  Release—validity—fraud in procurement.—Plaintiff, who was injured in a railway collision, and who signed a release in consideration of a certain sum, is not bound thereby, where the agent of the railway company procured her signature to the release by the use of fraud or false representations.  (Page 185.)

2.  CHANGE OF VENUE—DISCRETION OF COURT.—Under Act 249, Acts of
    1909, page 751, the venue of civil actions will not be changed
    unless the court or judge to whom the application for change of
    venue is made finds that the same is necessary to obtain a fair and
    impartial trial.   (Page 187.)

3.  CHANGE OF VENUE—NUMBER OF WITNESSES—DISCRETION OF COURT.—In
    hearing a petition for a change of venue, the court has a discre-
    tion to determine how many witnesses it will hear on the issue,
    and the exercise of that discretion will not be questioned, unless
    there is an arbitrary abuse of it.   (Page 188.)

Appeal from Franklin Circuit Court, Ozark District;
*Jeptha H. Evans,* Judge; affirmed.

*Thos. B. Pryor,* for appellant.

1.   Under the evidence showing that the plaintiff, a
well educated woman of more than ordinary intelligence,
after reading the release and informing herself of its con-
tents, signed it for a consideration of $40, and in the ab-
sence of any evidence of fraud or imposition inducing her
to sign the release, the jury should have been directed to
return a verdict for the defendant, and the court erred
in refusing to so instruct the jury.   87 Ark. 614; 82
Ark. 112.

2.   The court erred in refusing the petition for
change of venue.   74 Ark. 173.

*Sam R. Chew,* for appellee; *Jesse Turner* and *O. T.
Boaz,* of counsel.

1.   There was no error in overruling the motion for
change of venue.   As the law now stands, an application
for change of venue addresses itself to the discretion of
the trial judge, and unless it conclusively appears that
there was such an abuse of this dicretion as to amount to
a denial of justice, this court will not interfere with or
control it.   Acts 1909, p. 751; 153 S. W. 817; 106 Ark. 530.

2.   The jury's verdict is conclusive touching all dis-
puted facts in the case, and, from their verdict based
upon the evidence, the conclusion is clear that appellee
was overreached by the claim agent; that at the time the
release was signed, appellee's excitement was such, and
her mind was so completely occupied by the distressful

condition of her child, that she did not realize that she herself was injured, and did not know that she was signing a release for damages resulting from her own injuries. The facts bring this case within the rule heretofore announced by the court. 34 Ark. 613; 82 Ark. 105; 87 Ark. 614; 73 Ark. 42.

McCulloch, C. J. This is an action instituted by appellee in the circuit court of Franklin County, Ozark District, against appellant, to recover for personal injuries alleged to have been sustained while appellee was a passenger on one of appellant's trains.

Appellee resided, at the time the injury occurred, in Desha County, Arkansas, and was *en route* home from Coffeyville, Kansas. The train on which she was a passenger collided with another train in the railroad yards at Van Buren, Arkansas, and her foot was injured.

She was, by the verdict of the jury, awarded damages in the sum of $540, and it is not claimed that the verdict is excessive, if she is entitled to any recovery at all.

Appellee was a married woman, and had her infant in her arms, but was otherwise unattended on the journey. Shortly after the injury occurred, appellant's claim agent boarded the train and obtained releases from many of the passengers, including appellee. She signed a release purporting to be a settlement in full, in consideration of the sum of $40, of compensation for her personal injuries, and for damages to her baby buggy, and also the injuries sustained by her infant. The instrument also purported to be a settlement of the claim of appellee's husband on account of her injuries, and the name of her husband was signed thereto. There is a conflict in the testimony whether appellee signed her husband's name, but she admits that she signed her own name. She testified, however, that the claim agent induced her to sign by representing that it was only a settlement of the claim for the baby's injuries, and for the damage to the buggy.

This release was pleaded in bar of the right to re-

cover damages, and constitutes the only issue of fact in the case.

Negligence of the company with respect to the collision which caused the injury, is not disputed.

The law applicable to this feature of the case is settled in *St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 82 Ark. 105-112. In that case, a release was pleaded, which purported to cover all of the plaintiff's claim on account of injuries received in a collision. She testified that the settlement only covered compensation for delay and inconvenience, and did ont embrace compensation for personal injuries. In disposing of the question, we said:

"It was not correct to say that plaintiff was bound by the writing, even without knowledge of its contents, if she failed to read it over. If she was induced, on account of reliance on the false statements of the agent, to sign it without reading it, she was not bound by it. The fraud of the agent, if he, in fact, misrepresented its contents, vitiated it."

A very similar case is *Bliss* v. *New York, etc., R. R. Co.,* 160 Mass. 447, which involved a claim for personal injuries, and a release was pleaded. The plaintiff testified that he had accepted the payment of compensation for damages to his wearing apparel, but that nothing was said about pay for personal injuries, and he signed the release without reading it. The court held that, "If it was understood at the time that the payment was received only for the injury to his clothing, and that no claim for personal injury was settled for or released, and if the release and receipt were by fraud so phrased as to cover the claim also, and if they are avoidable by reason of the fraud, so far as the claim for personal injury is concerned, the plaintiff was under no obligation to return the money received by him."

The testimony of appellee was sufficient to make a case for the jury on the question of fraud in inducing her to sign the release. The settlement was made a short time after the collision, and, while appellee, according to her testimony, was laboring under great nervous strain.

Her infant was injured about the head, and she was greatly distressed and excited. The collision occurred about 1 or 2 o'clock in the morning, and the settlement was effected about daybreak before the train left the yards at Van Buren. Appellee did not know at that time that she had received any personal injuries herself, and stated to the claim agent that she was not injured. He proposed to pay $40 for the baby's injuries and for damage to the buggy, and she accepted it. The agent induced her to believe that it covered no other injuries, and she signed the release upon the faith of those representations. She admits that the agent read the release to her, and that she may have read it herself, but that she was so excited at the time that she did not comprehend its meaning, and relied entirely on the statements of the claim agent. She cashed the check when she passed through Little Rock later in the day, but still did not know that it was intended to cover her own injuries, and did not realize that she had received injuries to amount to anything. The extent of her injuries, she testified, was developed later. That state of the case was disputed by the claim agent and other witnesses introduced by appellant, but we can not settle that conflict in the testimony. That has been done by the verdict of the jury. We must test the verdict in the light of the testimony most favorable to appellee. It was legally sufficient to sustain the verdict, and, upon well-established principles, we must treat the issue as settled.

Error is assigned in the refusal of the court to give certain requested instructions on that issue. But we find that other instructions were given which correctly covered the same subject, and there was no prejudice in the court's refusal to give those requested by appellant.

There is one other question presented for review. That is the assignment of error in the court's refusal to order a change of venue. Appellant presented a petition, verified by one of its attorneys, and supported by the oath of several others, conceded to be credible persons. Evidence was adduced, *pro* and *con,* on the issue whether

the alleged ground for change of venue in fact existed. The court found that a fair and impartial trial of the case could be obtained in that county and district, and denied the prayer of the petition.

The statute authorizes the court in all civil cases, when a change of venue is asked, to investigate the alleged grounds set forth in the petition, and it provides that, ''the venue of civil actions shall not be changed unless the court or judge to whom the application for change of venue is made finds that the same is necessary to obtain a fair and impartial trial of the cause.'' Act 249, Acts 1909, page 751.

This applies to all civil action. *St. Louis, I. M. & S. Ry. Co.* v. *Transmier,* 106 Ark. 530; 153 S. W. 17.

The statute means, of course, that the court must hear evidence on the subject, and be governed by it in reaching a conclusion on the issue whether or not a fair and impartial trial can be obtained in the county. The court has a certain amount of discretion in weighing the evidence, but can not arbitrarily refuse to grant a change of venue when the evidence establishes the fact that a fair trial can not be obtained there.

Much has been said in the argument about the remarks of the trial judge in rendering his decision on the question of a change of venue. It is contended that the judge misconceived the law on the subject, and refused to grant the change because he thought it was beyond his power to do so in any case. The remarks are brought forward in the record, and after consideration of same, we are of the opinion that the judge did not misconceive the law on the subject, and that he meant to express his finding, from the evidence, that a fair trial of the case could be obtained in that county and district. It is true he stated that he had no discretion in the matter, but was bound to refuse the change of venue under the circumstances. Our construction of his language in that respect is, that what he meant to say was that, after finding that a fair trial could be had in that county and district, his discretion was gone, and that the statute com-

pelled him to refuse to order the change. He was correct in that, because the statute does expressly make the right to obtain a change of venue depend upon proof that a fair trial can not be had.

Another point is made upon the offer of appellant to produce as many as 200 more persons to sign the affidavit supporting the motion for a change of venue, and the court's reply that that would do no good, as a request of 200 persons would not compel him to make an order that he did not think was correct. It is argued that this shows that the judge refused to hear more testimony on the subject. We do not so construe his remarks, but think he merely meant that the number of affiants would not control his judgment against the testimony adduced. Appellant did not offer to introduce any more witnesses to support the petition for change of venue, but, on the contrary, the court heard all the evidence that was offered. Of course, the court has the right to exercise some discretion in determining how many witnesses will be heard on an issue of this kind, and that discretion will not be controlled unless there is an arbitrary abuse of it. We find nothing in this record that indicates a misconception on the part of the trial judge of his duty with respect to change of venue, nor that he abused his discretion in giving a fair hearing of the matter before reaching a conclusion.

Judgment affirmed.