KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* ARMSTRONG.

Opinion delivered October 26, 1914.

1. RELEASE—VALIDITY—PERSONAL INJURIES.—Where plaintiff, who was injured in a railway accident, executed a release to the railway company, both parties will be bound thereby in the absence of any fraud in the procurement of plaintiff's acceptance of the terms thereof, or because of mental incapacity, or in the absence of a showing that plaintiff executed the same in reliance upon the statements of a physician as to the extent of the injuries received.

2. RELEASE—VALIDITY—PAROL EVIDENCE.—When plaintiff executed a release in full to defendant of an unliquidated claim, for a certain consideration, while she was in the full possession of her faculties, and without any fraud or undue influence on the part of the defendant or its agents, she will be held bound thereby, and parol testimony to show that the release was only partial will be inadmissible.

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

*Pole McPhetrige* and *James B. McDonough,* for appellant.

The court should have directed a verdict in favor of the appellant. The release executed by the appellee, a woman of superior intelligence and education, who was at the time in full possession of all her senses, was valid and binding, and her claim that she did not understand at the time, that she was settling her claim for personal injuries, can not stand against the declaration, "I understand I am settling all claims against the Kansas City

Southern Railway Company,'' which she wrote into the release. 85 Ark. 592; 131 Ill. App. 653; 134 *Id.* 615; 118 N. W. 751; 71 Atl. 123; 120 N. W. 398; 103 Wis. 472, 74 Am. St. Rep. 877; 115 N. Y. S. 703; 106 Pac. 192; 105 Ark. 37; 107 Pac. 365; 74 Atl. 793; 124 S. W. 226; 126 N. W. 13; 124 N. W. 167; 101 N. Y. S. 196; 99 S. W. 141; 65 Atl. 530; 88 Pac. 221; 146 S. W. (Ark.) 861; 155 S. W. (Ark.) 499; 154 S. W. (Ark.) 518.

*H. A. King* and *Steel, Lake & Head,* for appellee.

Appellee was wholly inexperienced both of the world and of affairs. The claim agent had been for nine years in the employ of the appellant in its claim department, and in the *release business.* He mentioned to appellee only inconvenience and delay and represented to her that that was all he was settling for. His inducing appellee to write into the release the unusual clause of which appellant seeks to take advantage, at a time when her mind was centered upon the question of inconvenience and delay, was a circumstance showing fraud which should be scrutinized with care. 46 Mo. App. 79. The true test of the validity of the release, is, ''Did the minds of the parties meet upon the understanding of the payment and acceptance of something in full settlement of defendant's liability?'' 103 Wis. 472. We contend that under the circumstances of the case appellee can not be held to a release of anything more than any claim for inconvenience and delay, and that appellant was not released from liability for injuries the existence of which was unknown to both parties at the time, and a settlement for which could not have been in contemplation of both parties when the release was executed. *Id.;* 87 Ark. 614; 82 Ark. 105; 160 Mass. 447; 76 Ark. 88; 103 Ark. 341; 161 S. W. 1052; 86 N. E. 490; 130 Mass. 261; 198 Fed. 784; 61 N. E. 910; 35 App. D. C. 195; 158 U. S. 326; 198 U. S. 521; 30 N. W. 688; 5 Labatt, M. & S. 6021, 6027; 115 Fed. 57.

McCULLOCH, C. J. The plaintiff claims to have received bodily injuries on account of a collision of two trains while she was a passenger on one of them, and she instituted this suit to recover compensation for such in-

juries. The defendant, among other defenses, pleaded a release in writing alleged to have been executed by the plaintiff whereby she agreed and did accept the sum of $10 in money in settlement of all of her claims against said defendant company for injuries. The trial of the case resulted in a judgment in favor of the plaintiff for the sum of $2,500, and the defendant has appealed to this court.

The injury occurred on June 17, 1911, while plaintiff was a passenger on a local passenger train going south from Mena to Wickes. The train collided with a freight train and plaintiff testified that from the shock of the impact she was thrown forward, first to one side and then to another, and was jerked back into the aisle over the seat which she was occupying, and that her head struck on the back of the next seat and then the floor. This occurred on the night of June 17, which was on Saturday; and after the passengers had debarked from the train, they were carried back to Mena; at least, the plaintiff was carried back to that place where she stayed at one of the hotels of that city. She remained at Mena until about noon on Sunday, and then went to Wickes on another train, reaching there in the afternoon, and she spent the night there. She lived about three miles out in the country from Wickes, and the next morning walked out to her home in company with another young lady. The release was executed early Monday morning, June 19, before the plaintiff started to her home in the country. Said release reads as follows:

"Know all men by these presents: That, whereas, the undersigned, Miss Susie Armstrong, claims to have been injured by the Kansas City Southern Railway Company or their agents, and claims that the said railway company is liable for said injuries, but the said railway company hereby expressly denies that it is in any way liable for said alleged injuries, and,

"Whereas, it is nevertheless the desire of both said Susie Armstrong and said railway company to compromise and settle any and all controversies and claims

which the said Susie Armstrong has, or may have or claims to have, or may claim to have against the said railway company, because of, or growing out of said alleged injuries;

"Now, therefore, in consideration of the sum of ten dollars ($10) in hand paid to the undersigned, the receipt of which is hereby acknowledged, the aforesaid controversies and claims are hereby compromised and settled and the undersigned does expressly release and forever discharge the said The Kansas City Southern Railway Company and its officers and agents and all other persons from and all liability which the undersigned has, or may have, or claim or may claim to have arising or growing out of or connected with any injury received by the undersigned on or about the 17th day of June, A. D. 1911, at or near Hatfield, in the State of Arkansas, and hereby acknowledges full satisfaction thereof and therefor. .

"I understand that I am settling all claims against the Kansas City Southern Railway Company.

"In testimony whereof, witness my hand and seal, this 19th day of June, A. D. 1911."

The plaintiff testified at the trial of the case that she thought her injuries were only trifling ones, being slight bruises about the head and neck, and that when she executed the release she did so reluctantly and without any knowledge or belief that she had received any substantial injuries. She testified that the internal injuries, for which she claims compensation, were developed later; and she introduced physicians whose testimony tended to show that she had received such injuries, which would probably be permanent. This was contradicted by testimony introduced by the defendant, but that issue has been settled by the verdict of the jury.

The alleged settlement covered by the release was negotiated by the claim agent of defendant company. He appeared at the hotel in Mena where appellee was stopping Sunday morning; and, after being introduced to her, inquired whether or not she was injured in the collision and offered to settle for any such injuries. She replied

that she had received no injuries except slight bruises, and did not make any claim against the company. The agent then asked her if she had not been put to some expense and inconvenience for which she was entitled to compensation, and she disclaimed having any such inconvenience or expense except her hotel bill, and the agent proposed to pay the hotel bill, and did so. This is the narrative of what occurred at the hotel on Sunday as given by the claim agent and the proprietor of the hotel, who was a witness. The plaintiff herself gives no account of what occurred at the hotel. She mentions, however, that the claim agent had paid her hotel bill at Mena, and she gives a narrative in detail as to what occurred at Wickes the next morning when she executed the release. She states that the agent came to the hotel at Wickes where she was stopping, and that the following occurred: "I came out of the door of the hotel and he spoke—says: 'Good morning,' and then the next thing he said he wanted to give me ten dollars, and I asked him why he wanted to give me ten dollars, and he said, 'Well, to pay for inconvenience and delays that you have been put to on account of this wreck.' I knew that would be my expenses all right. The hotel bill had already been paid at the Antlers Hotel. I hadn't really lost any time. I wasn't teaching at the time, so I knew ten dollars would be ample to pay what I had lost of time, and inconvenience I had been put to; so I signed that release accepting that ten dollars on that ground." She stated further that she did not know that the release covered anything except compensation for inconvenience and expense on account of the delay, and that the release was not read over to her, but that the agent told her that that was all it covered. She admitted, however, that at the suggestion or dictation of the agent she wrote into the release the following concluding words: "I understand that I am settling all claims against the Kansas City Southern Railway Company."

(1-2)  It will be observed that the release contract in express terms refers to the occasion on which the plain-

tiff's claim for physical injuries is based and covers all claims which she had or could have had growing out of or connected with any injury received by her on that occasion. In other words, the contract, in the most complete terms, contains a covenant for a settlement of all claims in consideration of ten dollars, which was paid. The question is therefore presented whether there is anything in the evidence which affords the plaintiff any escape from the binding force of her contract, and whether the evidence warranted a submission of that issue to the jury. We think that under the uncontradicted evidence in this case the plaintiff is bound by the contract, and that the court should not have submitted the case to the jury. This is not a case where the plaintiff is shown to have been mentally incapacitated from entering into the contract, as in *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 73 Ark. 42; *Bearden* v. *St. Louis, I. M. & S. Ry. Co.,* 103 Ark. 341, or *St. Louis, I. M. & S. Ry. Co.* v. *Reilly,* 110 Ark. 182; nor is it a case where there was fraudulent representations as to the contents of the written instrument, or any trick or subterfuge whereby the papers were substituted so as to induce the contracting party to execute it, as in *Hot Springs Railroad Co.* v. *McMillan,* 76 Ark. 88, *St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 82 Ark. 105; neither is this a case where the injured person executed the release in reliance upon the superior knowledge of the physician or surgeon of the company as to the extent of the injuries, as in *St. Louis, I. M. & S. Ry. Co.* v. *Hambright,* 87 Ark. 614. The parties having deliberately contracted with each other for a settlement of the unliquidated claim, they are both bound by the contract; and in the absence of fraud in the particulars indicated above in the decided cases, neither of the parties can be permitted to introduce testimony to show that the release was only partial.

Speaking of the conclusive effect of a release in the case of *Cherokee Construction Co.* v. *Prairie Creek Coal Mining Co.,* 102 Ark. 428, we said: "The lease or instrument in question was something more than a mere re-

ceipt. It was the final embodiment in writing of the agreement between the parties. It is a comprehensive discharge, not only of the differences between the parties, but of all matters between them. The natural meaning of the language used is broad enough to cover everything connected with the first lease. To permit the plaintiff to show by parol proof that it was not so intended would be to contradict or explain away the instrument, which is contrary to the established rule of law as established by the previous decisions of this court."

The fact that neither of the parties knew that the plaintiff had received internal injuries, of which she now complains, does not alter in the least the above announced principle. They were expressly contracting with reference to injuries received on a certain occasion, the claim was unliquidated, and the contract shows that the parties intended to settle all matters between them relating to that incident. Neither party knew of these injuries, but the defendant was expressly contracting against any such contingency as an unexpected claim arising, and it is unimportant that there was a mutual mistake as to the extent of the injuries unless the plaintiff relied and had the right to rely upon the superior knowledge of the other contracting party as to the extent of the injury. There is no such element as that in this case. The only attempt on the part of the plaintiff to show fraud is that the claim agent followed her up for the purpose of inducing her to make a settlement, and that he stated to her that the release only related to the matter of compensation for inconvenience and expense of the delay. She says, too, that she was in a nervous state and now feels that she wasn't in a condition at that time to make a settlement. The testimony does not, however, justify a submission of any of those issues to the jury; for, according to the undisputed testimony, she wrote into the release the positive statement that it covered all claims against the company. She was an intelligent young woman, a school teacher, and her testimony shows that she understands the nature of the language used. Her statement that she did not

then, and does not now understand that the language mentioned has any other meaning than that to be drawn from its plain letter can afford no just grounds for setting aside her contract. She was and is of sufficient intelligence to understand it, and the conclusive presumption is that she did understand it. The settlement was made two days after the injury occurred, and the evidence showed that plaintiff was accompanied by one of her friends, and that she was not laboring under any mental disability. She was up and going about on Sunday, the day intervening between the dates of the injury and the settlement, and immediately after she made the settlement she walked from Wickes out to her home three miles in the country.

The settlement was an improvident and unnecessary one, but the plaintiff entered into it in full possession of her senses and without the perpetration of any trick or fraud on the part of the claim agent that would justify the courts in disregarding the contract. Therefore the plaintiff is bound by it. The evidence on this issue being undisputed as to material points, and being insufficient to sustain a verdict, the judgment will be reversed and the cause dismissed. It is so ordered.