TEXAS COMPANY *v.* WILLIAMS.

Opinion delivered February 4, 1929.

*Powell, Smead & Knox,* for appellant.

*Haynie, Parks & Westfall,* for appellee.

McHaney, J. Appellee brought this action against appellant to recover $6,500 on an alleged oral contract to pay him such sum for personal injuries sustained by him on or about June 30, 1925. He alleged that on January 15, 1927, he entered into an oral contract of settlement with appellant, by which he was paid $1,500 in cash and was to be paid $5,000 in semi-monthly installments of $75 each; that appellant neglected and refused to pay said installments, and that, at the time of filing suit, twenty-six of said payments were past due, in the sum of $1,950, for which amount he prayed judgment. Appellant denied making any such settlement, or that its claim agent had any authority to make such settlement. It set up as a defense a release agreement executed by appellee in full settlement of all claims, in consideration of $1,500 paid to him by appellant, a copy of which is as follows:

"Know all men by these presents: That I, H. B. Williams, for the sole consideration of fifteen hundred and no/100 dollars, to me in hand paid by The Texas Company, have released and discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge the said The Texas Company of and from all claims, demands, damages, actions, or causes of action, on account of injuries resulting, or to result, from an accident to me which occurred on or about the 30th day of June, 1925, by reason of being injured by pulley shaft and centrifugal pump at Bradley vacuum station, near Griffin, Arkansas, rupturing my right side, back, hip, and other serious injuries to my body, totally disabling me, and of and from all claims or demands whatsoever in law or in equity which I, my heirs, executors, administrators, or assigns can, shall or may have by reason of any matter, cause or anything whatsoever prior to the date hereof.

"In witness whereof I have hereunto set my hand and seal this 15th day of January, 1927.

"H. B. Williams.

"In the presence of R. R. Brown, R. E. Wood."

Appellee replied, stating that he did not read the release agreement signed by him, and that appellant's claim agent falsely and fraudulently misrepresented the instrument to him as only a receipt for $1,500 cash payment, and that he signed same relying on statements of said agent that it was only a receipt for said sum; and that he was weak and nervous from his injury at the time, which was January 15, 1927.

Only three witnesses testified who pretended to know anything about the settlement—the appellee for himself, and appellant's claim agent, R. E. Wood, and R. R. Brown, who signed the release agreement as a witness, at the request of Wood, for appellant. Appellee admitted signing the release, but said he did not read it; that Wood read it to him, and that, as he understood it, he was to be paid $1,500 in cash and $75 semi-monthly until an additional $5,000 was paid; that, when the first installment came due, he wrote appellant demanding payment, and that he had written several letters since that time inquiring about it, but received only one letter in reply. He then brought suit on the 26 installments past due.

Witness Brown testified that his office was next to Wood's, and that he signed the release as a witness at Wood's request; that he saw appellee sign it, asked him if he signed it, and he said he did; that he understood that Wood was paying appellee $1,500 for personal injury case, and that appellee wanted to sign the release.

Wood contradicted appellee in all essential particulars. He denied that there were to be any further payments in addition to the $1,500 cash, but said that the $1,500 was a full and complete settlement with appellee for all claims on account of the injury sustained by him while in appellant's employ; that it was a case where he did not consider there was any liability, but that he

finally succeeded in getting his company to authorize him to pay $1,500 in full settlement, and that this sum was paid more out of sympathy for appellee than on account of any liability. He stated that he showed appellee a letter from appellant, by which he was authorized to make the settlement and take the release agreement which was taken, and that he had no authority to make the agreement alleged.

Appellee did not deny having been shown the letter authorizing Wood to settle with him for $1,500 and to draw a draft on appellant for such sum.

All the testimony regarding the alleged oral agreement which tended to contradict and vary the terms of the written agreement of settlement was admitted, over appellant's objections and exceptions. At the conclusion of the testimony appellant requested a peremptory instruction in its favor, which the court refused, over its exceptions. There was a verdict and judgment for $5,000 in appellee's favor.

We think the request for a peremptory instruction should have been sustained. The evidence shows that appellee is a man 39 years of age, is able to read and write, and possesses reasonable intelligence. There was no confidential relationship existing between appellee and Mr. Wood, appellant's claim agent, and no reason why he should rely upon his statements as to what the instrument contained. He admitted signing the release agreement, but said he did not read it, but he relied upon Wood to write the release in accordance with their previous agreement, and that he signed it without knowing its contents. He testified that Wood read it to him, but that what he read was not like the instrument exhibited at the trial. The evidence wholly fails to establish any fraud on the part of appellant whereby appellee was induced to sign the release agreement. As said by this court in the recent case of *Magnolia Petroleum Co.* v. *McFall, ante,* p. 596:

"The plaintiff was thirty-nine years old, and had been employed by the railway company for eighteen

years. He was not an illiterate person, and gave no reason why he did not read over the contract for the release of damages, except that the agent told him that it was only payment for his expenses and loss of time."

Appellee and Wood were dealing at arms' length. They were representing conflicting interests, and, as above stated, no relation of trust or confidence existed between them. Under such circumstances, he will not be permitted to say that he did not know what the written instrument contained, that he did not intend to execute such a contract, but intended to execute another; and he will not be permitted to avoid the written instrument by merely stating that the claim agent told him it was something else, and that he did not read it, when he admits himself that he signed the instrument, and was able to read, write and understand the nature of the contract. In *Upton* v. *Tribilcock*, 91 U. S. 50, the Supreme Court of the United States used this language:

"It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this was permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

The evidence in this case shows that appellee had ample opportunity to read the instrument. It was prepared by Wood, and left with appellee to read and sign while Wood went to a near-by office to get Mr. Brown to witness appellee's signature to the instrument. When Wood and Brown returned, he had either read the instrument or was still reading it, and was about to attach his signature to the same, which he did in Brown's and Wood's presence. Appellee relies most strongly upon the case of *St. L. I. M. & S. R. Co.* v. *Smith*, 82 Ark. 105, 100 S. W. 884, but we do not regard that case nor the others cited by appellee of controlling importance here. This case is controlled by the principles announced in

*Kansas City So. Ry. Co.* v. *Armstrong,* 115 Ark. 123, 171 S. W. 123, where this language was used:

"It will be observed that the release contract in express terms refers to the occasion on which the plaintiff's claim for physical injuries is based, and covers all claims which she had or could have had growing out of or connected with any injury received by her on that occasion. In other words, the contract, in the most complete terms, contains a covenant for a settlement of all claims in consideration of ten dollars, which was paid. The question is therefore presented whether there is anything in the evidence which affords the plaintiff any escape from the binding force of her contract, and whether the evidence warranted a submission of that issue to the jury. We think that, under the uncontradicted evidence in this case, the plaintiff is bound by the contract, and that the court should not have submitted the case to the jury. This is not a case where the plaintiff is shown to have been mentally incapacitated from entering into the contract, as in *St. L. I. M. & S. R. Co.* v. *Brown,* 73 Ark. 42, 83 S. W. 332; *Bearden* v. *St. L. I. M. & S. R. Co.,* 103 Ark. 341, 146 S. W. 84; or *St. L. I. M. & S. R. Co.* v. *Reilly,* 110 Ark. 182, 161 S. W. 1052; nor is it a case where there were fraudulent representations as to the contents of the written instrument, or any trick or subterfuge whereby the papers were substituted so as to induce the contracting party to execute it, as in *Hot Springs Railroad Co.* v. *McMillan,* 76 Ark. 88, 88 S. W. 846; *St. L. I. M. & S. R. Co.* v. *Smith,* 82 Ark. 105, 100 S. W. 884; neither is this a case where the injured person executed the release in reliance upon the superior knowledge of the physician or surgeon of the company as to the extent of the injuries, as in *St. L. I. M. & S. R. Co.* v. *Hambright,* 87 Ark. 614, 113 S. W. 803. The parties having deliberately contracted with each other for a settlement of the unliquidated claim, they are both bound by the contract, and in the absence of fraud in the particulars indicated above in the decided cases, neither of the parties can be

permitted to introduce testimony to show that the release was only partial.''

As we have already stated, the parties were dealing at arms' length, and, even though the agent misrepresented to appellee the contents of the written instrument, he had no right to rely upon such misrepresentations, since he admitted himself that he was thirty-nine years of age, and able to read and understand the contents of the written instrument. The following from *Cherokee Construction Co.* v. *Prairie Creek Coal Mining Co.,* 102 Ark. 428, 144 S. W. 927, was quoted with approval in *K. C. So. Ry. Co.* v. *Armstrong, supra,* with reference to the conclusive effect of a release agreement:

''The lease or instrument in question was something more than a mere receipt. It was the final embodiment in writing of the agreement between the parties. It is a comprehensive discharge, not only of the difference between the parties, but of all matters between them. The natural meaning of the language used is broad enough to cover everything connected with the first lease. To permit the plaintiff to show by parol proof that it was not so intended would be to contradict or explain away the instrument, which is contrary to the established rule of law as established by the previous decisions of this court.''

So here the written contract of release, executed and delivered, was the final contract between the parties, no matter what had previously gone before. To permit appellee now to testify that, although he signed the instrument and received the $1,500 mentioned therein, it was not the contract he intended to sign, but that they were to pay him $5,000 more in semi-monthly installments of $75 each until $5,000 additional was paid, would be to put at naught the fundamental rule of evidence with reference to written contracts.

The only attempt on the part of appellee to show fraud is that the claim agent represented to him that he was signing a receipt for $1,500, and not an absolute

release. This was not sufficient to justify a submission of the case to the jury.

For a further discussion of the binding effect of release agreements, see the recent case of *Mo. Pacific Rd. Co.* v. *Elvins,* 176 Ark. 737, 4 S. W. (2d) 528.

Having reached the conclusion that there was no sufficient showing of fraud and that the release agreement executed by appellee was for a substantial consideration and without fraud in its procurement, there was no question to be submitted to the jury. The judgment of the circuit court is therefore reversed, and the cause of action dismissed.