EMMA E. COX, RESPONDENT, v. THE NORTH-WESTERN STAGE CO., APPELLANT.

WRITTEN INSTRUMENTS—"DUE EXECUTION."—The due execution of an instrument in writing goes to the manner and the form of its execution, by a person competent to execute it according to the laws and customs of the country where executed.

IDEM—"GENUINENESS" OF AN INSTRUMENT.—The genuineness of an instrument in writing goes to the question of its having been the act of the party, just as represented; or, in other words, that the signature is not spurious, and that nothing has been added to or taken from it, which would lay the party signing or changing the instrument liable for forgery.

Practice.—A failure by plaintiff to deny, by affidavit, the genuineness and due execution of an instrument in writing set forth in the answer as the foundation of the defense, does not preclude the plaintiff from showing, on the trial, that it was procured by fraud or misrepresentation.

Continuance—Postponement—Discretion.—Postponing a trial rests in the sound discretion of the court; and this court will not review that discretion, unless there appears to have been a very gross abuse in its exercise.

Weight of Evidence—Verdict.—When there is some evidence to sustain each of the material questions upon which a jury is bound to find in order to support a verdict, this court ought not to disturb the verdict, even if the court would have found differently on any or all of the issues.

Fraud—Weight of Evidence.—If there is some evidence tending to show fraud, the question, whether or not there actually was fraud, is to be submitted to the jury.

Sealed Instrument.—An instrument under seal, not required by law to be sealed to give it effect, gives it no more solemnity, or makes it no more binding upon the party sought to be charged thereby, than if not under seal.

Jury—Presumption.—A jury is presumed to have found its verdict upon the facts without having been influenced by passion or prejudice, and where a verdict is for a less sum than the full amount demanded in the prayer of the complaint, this presumption is strengthened. That a jury has been influenced by passion or prejudice must be made to appear affirmatively.

Appeal from the second judicial district, Ada county.

*H. L. Preston, Jos. W. Huston, and H. E. Prickett,* for the appellants.

*E. J. Curtis and McBride & Henly,* for the respondent.

Whitson, J., delivered the opinion; Lewis, J., concurring. Noggle, C. J., dissented.

On the thirty-first day of October, 1870, Emma E. Cox commenced in the district court of Ada county an action against the North-western Stage Co., of which Fuller, Parker & Co. were proprietors, alleging in her complaint that on the twenty-sixth of September, 1870, the said company were common carriers of passengers for hire by stage-coach, between Silver City in the county of Owyhee and Boise City in the county of Ada; that on said day the defendants received her upon their stage-coach to be carried from Babbington's station in Owyhee county, to Bernard's station in Ada county, on the line of said stage route; that

while she was such passenger between said stations the coach upon which she was being carried was by the carelessness and negligence of the defendants overturned and thrown down, by means whereof she was greatly bruised, wounded, and permanently injured in body, and had so continued from the day of the accident up to the commencement of the action, whereby she was damaged generally in the sum of twenty thousand dollars, and specially in the sum of six hundred dollars, for which she asked judgment. On the seventh of November, 1870, the district court convened, and on the eighteenth of November, the defendants filed their answer denying every material allegation in the complaint, except that they were common carriers; and also set up as a bar to the action, that on the twenty-sixth of September, the plaintiff executed an instrument of writing under her hand and seal, whereby she had released the company from any and all liability on account of any injury she had received by reason of the accident; which instrument was set up by copy in the answer. On the nineteenth of November, defendants moved for judgment on the pleadings, for the reason that the plaintiff had filed no affidavit denying the due execution and genuineness of the instrument of writing which had been set up by copy in the answer. The court overruled the motion and defendants excepted. On the same day defendants moved for a continuance, on the affidavit of E. S. Hubbell, which was resisted upon the counter affidavit of plaintiff. The court overruled the motion and defendants excepted.

On the twenty-first of November, the cause went to trial, and continued until the twenty-third, when the court charged the jury, who, on the same day, returned a verdict for plaintiff for fifteen thousand dollars general, and two hundred and eighty dollars especial damages. Defendants moved for a new trial. The motion was heard and determined adversely to the motion, on the twenty-fourth of December, to which defendants excepted.

The defendants appeal to this court, and the questions presented for our consideration are: 1. Did the court err in refusing to give the defendants judgment on the plead-

ings? 2. Did the court err in refusing to postpone the trial? 3. Did the court err in charging the jury upon matters of law? 4. Did the jury give damages not supported by the evidence as applied to the law given by the court?

The discussion of the first proposition involves a question of practice under the statute only. Sections 53, 54, and 65 of the civil practice act provide as follows:

Sec. 53. " When an action is brought upon a written instrument, and the complaint contains a copy of such instrument, or a copy is annexed thereto, the genuineness and due execution of such instrument shall be deemed admitted, unless the answer denying the same be verified.

Sec. 54. " Where the defense to an action is founded on a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument shall be deemed admitted, unless the plaintiff file with the clerk, five days before the commencement of the term, at which the action is to be tried, an affidavit denying the same; provided, that the due execution of the instrument shall not be deemed to be admitted by a failure to controvert the same on oath, as prescribed in this and the last preceding section, unless the party controverting the same is, upon demand, permitted to inspect the original before filing such answer.

Sec. 65. " Every material allegation of the complaint, not specially controverted by the answer, shall, for the purposes of the action, be taken as true; the allegation of new matter in the answer shall, on trial, be deemed controverted by the adverse party."

It is claimed by the defendants that the plaintiffs, in not denying under oath the genuineness and due execution of the release set up by them in their answer, should be deemed to have admitted its genuineness and due execution. While we do not think that section 65 denies for the plaintiff the genuineness and due execution of the written instrument set up as a bar by the defendants, there can be no doubt but that such section does controvert for the plaintiff every other fact alleged by the defendants and set up as new matter by way of defense. There can be no doubt but that

section 54 was intended to vary the general rule provided for in section 65, and the question arises, what did the plaintiff admit by not filing an affidavit?

Evidently she admitted nothing, except that release was genuine and duly executed; for section 65 has controverted for her every other allegation of new matter in the answer, which is alleged affirmatively therein, or which follows as a deduction therefrom.

Defendants say to plaintiff, in their answer, substantially: "You have given us a release of all demands you ever had against us, and you have done this under your hand and seal, and the law presumes that such instrument was genuine, and duly executed, and, as a necessary deduction, that you intended everything which could be claimed under the release."

Plaintiff says to defendants, in her reply, which the law puts in for her: "I admit that such release was duly executed by me, and that it is genuine; but I deny that I intended what the terms of the writing imply, and contend that it was obtained by fraud and misrepresentation." Could plaintiff truthfully say more? Could plaintiff have denied the due execution and genuineness of that instrument without committing perjury, and yet it be true, as a matter of fact, that she was in every way competent to, and, in fact, did execute the very instrument alleged in the answer, in the manner and form as set up therein? We think not. The due execution of an instrument goes to the manner and form of its execution according to the laws and customs of the county, by a person competent to execute it. The genuineness of an instrument evidently goes to the question of its having been the act of the party just as represented, or, in other words, that the signature is not spurious; and that nothing has been added to it, or taken away from it, which would lay the party changing the instrument, or signing the name of the person, liable for forgery.

If Fuller, Parker & Co. should, through their authorized agent, go to A., a stock-raiser in this valley, and should execute a note for two hundred dollars to him, as the consideration for a fine stage horse of which he represented himself, and

of which they believed him to be the owner, but which in fact belonged to B., would any lawyer say that because the consideration had failed, that therefore the note was not duly executed and genuine? Where a written instrument is set up in a complaint as the foundation of an action, and its genuineness and due execution are not denied by a verified answer, the same rule applies in relation to what is deemed to be admitted, as in the case where the answer sets up a written defense, and no affidavit, denying its genuiness and due execution, is filed. Take as an illustration the case of the company in the purchase of the horse of A., and let us further suppose that A. should bring an action to recover the two hundred dollars upon the note given A. for B.'s horse, and a copy of the note should be set out in the complaint, what would the company be admitting by setting up the misrepresentation and fraud on the part of A., if they failed to deny the genuineness and due execution of the note? Could it be contended that setting up those facts of fraud and deceit was denying the genuineness and due execution of the note? Clearly not. We think that the law in the case at bar, set up for plaintiff every defense against this release that the company set up in their answer in our supposed case, unless it should be contended that their defense of fraud and misrepresentation was a denial of the genuineness and due execution of the instrument, which we do not think could be maintained, even if their answer was verified.

We think this view of the case is amply sustained by the following authorities under similar statutes and rules of practice to ours: *Smith* v. *Milburn,* 17 Iowa, 30, and 13 How. 103; *Corcoran* v. *Dall,* 32 Cal. 83; *Bryan* v. *Manne,* 28 Id. 238; *Herold* v. *Smith,* 84 Id. 122.

The second proposition is, "Did the court err in refusing to postpone the trial?" The question of postponing trials has always been held by the courts to be in the sound discretion of the court which had a knowledge of all the facts and circumstances in the case, and it has never been the policy of appellate courts to control the discretion of the lower courts, unless there was a very gross abuse of discre-

tion.   Section 158 of the civil practice act is the only provision which provides for a postponement, and that section only provides when a postponement shall not be granted, and we can only infer that by implication in certain cases a continuance should be granted, in the sound discretion of the court.   It has been held in California, under a similar statute to ours, that even in a criminal case, where a counter affidavit was filed tending to show that the application was not made in good faith, the court did not abuse its discretion in refusing a continuance.   (*The People* v. *De Lacey*, 28 Cal. 589.)   In this case the application is based upon the affidavit of E. S. Hubbell, who is an agent of the company, and who swears the company expects to prove certain things by one D. R. Johnson, who had been. duly served with subpœna as a witness for the company.   Hubbell swears that the company expect to prove by Johnson that the drivers were forbidden to receive any passenger on the coaches of the company who had not been regularly entered upon the way-bills; that he had settled this matter in controversy with Miss Cox, who fully understood the terms of the settlement; that plaintiff had, before and after the settlement, admitted that she was on the stage without the consent of the company; that there was no negligence on the part of the driver, and that the overturning of the stage was purely accidental; that the agents or attorneys of the company did not know that Johnson was going away until late in the evening before his departure on the following morning.   It appears that the drivers had orders to not receive any passenger on the coach who had not been regularly registered on the way-bill, and yet there was no one by whom this fact could be proved.   But even if such were the orders, it does not .appear from the affidavit that Miss Cox was admonished of this fact, and therefore it was immaterial as to whether such orders were given drivers or not.

Miss Cox flatly contradicts every other thing which Hubbell says Johnson would swear to, and the affidavit stated that all these matters were either admissions of hers, or transactions with which she was connected, and of which

she must have necessarily had a personal knowledge. We think that her affidavit had a very strong tendency to show that the affidavit of defendant's agent was not made in good faith.

3. The question as to how far the court erred in charging the jury is in this case purely a law question, as it does not appear from the charge of the court that any attempt was made to state the facts, or to assume that anything had been proved. The court charged the jury upon the question of fraud and negligence, and we think the charge sound upon these subjects, as well as upon all the essential questions of law raised in the case.

4. As the charge of the court is so intimately connected with the facts, as found by the jury, we come now to consider as to whether or not the jury was justified in finding what they did under the facts, as applied to the law given to them by the court.

We must presume that the jury found four things: 1. That the plaintiff was very severely injured by the overturning of defendant's stage-coach; 2. That such accident was the result of carelessness on the part of the company's driver; 3. That the release was obtained by fraud; and 4. That she was damaged in the sum of fifteen thousand two hundred and eighty dollars. These four things were all essential in order to enable plaintiff to recover, and the only question for us to determine is, was there some evidence on each of these points to support the verdict? The question is not whether this court would have found as the jury did, but whether or not there was such an abuse of discretion on the part of the jury as to demand an interference by this court. No one will contend but what the jury had a right to pass upon all of these questions.

1. As to the first fact found by them, we do think that there was not only some evidence to support the finding, but considerable.

2. As to the second fact found, the rule is, that if there is evidence tending to show fraud, the question as to whether or not there actually was fraud, is to be submitted to the jury. It is not necessary for us to go further than to deter-

mine whether or not there was such a tendency in the facts surrounding the execution of this release. The testimony is that the plaintiff did not read the instrument, but that she relied on the statement of those who told her that it was a paper which Mr. Johnson wanted her to sign, to show the company that he had paid the doctor's bill, and made everything all right. All the witnesses use the same phrase. Why put in doctor's bill if "made everything all right" was intended to cover every other claim that plaintiff had against the company? Why not have said that the paper was "wanted by Mr. Johnson to show the company that everything was all right?" Why not have said that "this paper is to show the company that the plaintiff had relinquished all right of action against it?"

The doctor's bill may have been made very prominent in order to detract the attention from the importance of what followed. We doubt whether or not the most acute observer would ever have mistrusted that "made everything all right," when used in connection with "paid the doctor's bill," meant anything more than that everything had been made all right in relation to the doctor's bill. While this court may not have found that there was sufficient fraud to set aside the release, we do think that there was enough evidence on that subject to submit to the jury that question, and that the court properly submitted the actual fact of fraud to them.

The fact that the release was under seal imports no more dignity than if it had been otherwise, because it was not an instrument which is required to be under seal.

A plain receipt reading,

"Received, September 26, 1870, of Fuller, Parker & Co., one hundred dollars, in full of all demands, of whatsoever nature, against them held by me.

"Signed,                               EMMA E. COX,"

would have been as binding on her in such a case as the most solemn and dignified release that could be prepared. One would be of no more avail than the other under the same state of facts.

3. The jury evidently believed that there was negligence

on the part of the company, or in other words, that the accident might have been avoided. There is nothing which goes to show that the jury found their verdict upon the belief that there was gross negligence, and even if the rule is different in cases of gross or mere negligence, in this case the questions would be entirely immaterial, as it is not alleged in the complaint that there was gross negligence, nor does it appear from anything that the jury intended to give plaintiff any more than compensatory damages. It is equally true that if the jury were only intending compensatory damages, it is immaterial whether the stage was driven by the proprietors or their servant.

4. The jury found that the plaintiff had been damaged generally fifteen thousand dollars, and specially two hundred and eighty dollars, and for that reason alone we are asked to find three facts: 1. That the jury were giving exemplary damages; 2. That they were influenced by passion or prejudice; and 3. That the amount of damages was disproportionate to the injury sustained. As to the first point, we are at a loss to know how we are to infer that because the jury found a particular sum under a correct charge as to the law, and the facts of which they were the exclusive judges, therefore they gave more than compensatory damages. The jury have not told us that they intended exemplary damages, and to presume it would be to presume against the long-established rule that a jury are presumed to find according to the law and facts.

As to the second point, we do not see by what rule we are to say that the jury were influenced by passion or prejudice. Does not the fact that they might have found a verdict for five thousand dollars more than they did, completely answer any presumption of that kind? There is nothing which goes to establish such a state of facts. Nothing appears from which we can infer any such fact, except the mere assertion of defendants. As to the third point, that the damages given are disproportionate to the injury sustained, we can not conceive how or by what rule we are to determine that question. Twelve men have said, upon a matter of fact of which they are presumed to be as good judges as

we, that this plaintiff has in all probability been injured for life, and that she ought to have fifteen thousand dollars. Upon what rule of computation can we say that she ought not to have so much? Who can place a value in dollars and cents upon an eye, an arm, or a leg? With what measure can human suffering and loss of bodily strength be computed?

Is there any probability that twelve lawyers, after having perused all the law-books from Blackstone down, could write on separate slips of paper twelve amounts, any two of which would agree? The presumption is in favor of an impartial and considerate action on the part of a jury, and we must be convinced affirmatively before we could, by any rule of law, be permitted to question such presumption. A jury of twelve good and lawful men have said by their verdict, that this plaintiff has been damaged in the sum of fifteen thousand two hundred and eighty dollars, and we do not think that, under the law and facts, we would be justified in saying that they were not correct, as well as honest, in their judgment.

The judgment of the court below is affirmed.