## WEAVER et al. vs. CARNALL et al.

1. PLEADING: *Non est factum: Affidavit.*

When a defendant, in his answer, directly denies the execution of the instrument sued on, and verifies the answer by his affidavit, there is no necessity for him to file an additional affidavit, denying its execution, as prescribed by *sec.* 2495 *Gantt's Digest*, in order to require the plaintiff to prove its execution.

2. AGENT: *What he may delegate to another.*

An agent can not delegate any portion of his power requiring the exercise of judgment or discretion; otherwise, however, as to powers or duties merely mechanical in their nature. And so, where A authorizes B to borrow money of C and sign his name to a note for it, and B borrows the money, and, at his request, and in his presence, D signs A's name to the note, thus, "A by D," this is the act of the agent, and in legal effect the act of the principal, and not of D, who does the mere mechanical act of signing the name.

Weaver et al. vs. Carnall et al.

APPEAL from *Sebastian* Circuit Court.
Hon. J. H. ROGERS, Circuit Judge.
*Sandels*, for appellants.
*Du Val & Cravens, contra.*

ENGLISH, C. J. This was an action on a promissory note, brought in the circuit court of Sebastian county, Fort Smith district, by William J. Weaver and Henry Pentzel, as administrators, with the will annexed, of George S. Birnie, deceased, against John Carnall and Thomas Lanigan.

The note sued on is as follows:

"$500. Sixty days after date we jointly and severally promise to pay George S. Birnie, Esq., or order, five hundred dollars, for value received, with interest from date at the rate of one and one half per cent. per month.

"JOHN CARNALL,<br>"By W. B. SUTTON,<br>"THOS. LANIGAN."

The complainant alleged, in substance, that defendants executed and delivered the note to George S. Birnie, who afterwards died, leaving a will, which was probated, and the persons named as his executors declining to qualify, plaintiffs were appointed by the probate court of Sebastian county, Fort Smith district, administrators, with the will annexed. With the complaint was filed a copy of the note, and the original held subject to the order of the court, and inspection of defendants.

Lanigan pleaded bankruptcy, and was discharged.

Defendant, Carnall, filed an answer with two paragraphs. The court, on motion of plaintiffs, required him to elect

between them, and he elected to rely on the first paragraph, which is as follows:

"Now comes the said defendant, John Carnall, and for answer to said complaint of said plaintiffs, saith that he did not make and deliver said promissory note, in said complaint of the plaintiffs set forth and described."

To the answer was attached the following affidavit:

"The defendant, John Carnall, says that he believes the statements in the foregoing answer are true."

Subscribed by affiant, and sworn to before a notary public.

The defendant did not make and file an affidavit denying the genuineness of the note sued on, as provided by sec. 2495 Gantt's Digest (sec. 580 Civil Code).

Both parties announcing themselves ready for trial, and a jury being impanneled, plaintiffs offered to read in evidence the note sued on, without proof of its execution, and, upon the objection of the defendant, it was excluded by the court, and plaintiffs excepted.

Plaintiffs then read in evidence, without objection, the following letter:

"HOT SPRINGS, ARK., October 1, 1873.

"MAJOR LANIGAN—Dear Sir: A letter of Mrs. Haynes', of date sixteenth ult., and inclosed in one of your envelops, reached me here. Mrs. H. seems to me to be in distressed circumstances, and we must relieve her, if possible. I would like, if you will do so, to get $500 from the bank, or from Mr. George T. Birnie (to whom I am already indebted for many kindnesses), and I will sign a note with you for said amount, until we are in a condition to make you title, when you can pay it. Perhaps Mr. B. would let us have it at 1½ per cent., as the woman must actually be very needy. If you can not advance it (and I hardly suppose you can willingly spare it now), get it and inclose to me at Little

Rock, or in letter to her at Helena, care Tappan & Horner, and write me of so doing. You are authorized to sign my name to any such note.

"I believe that note for $200, for Miss Jennie S. Spring, is about due; don't let it be protested. Very truly, yours,

"JOHN CARNALL.

" I write Mrs. H. to-night."

Plaintiff then introduced William B. Sutton as a witness, who testified, in substance, as follows:

"That he signed said Carnall's name to said note, at the request of said Lanigan. Said Lanigan and Mr. Birnie being in the office of the store some thirty yards distant. Said Lanigan brought witness the draft of said note, with pen and ink, said he was going to sign it, that he had authority from said Carnall to sign his name thereto, but thought it would look better for witness to sign Carnall's as he would sign his own. That witness then and there, in the presence of said Lanigan, signed the name of said Carnall, and then said Lanigan signed it afterwards. That witness had no authority from said Carnall to sign said note; that witness and Lanigan were considered as partners at the time; that the money, he understood, was for private use; that it was not for the partnership business, and the money in no way went into the partnership business. Witness did not speak to Birnie upon the day the note was signed."

Plaintiffs then called Thomas Lanigan as a witness, who testified that he received the $500 from Mr. Birnie, and remitted it to Mrs. Haynes; did not recollect informing Carnall thereof by letter; and did not know whether he ever told him that the money had been sent to Mrs. Haynes.

Plaintiffs then called defendant Carnall as a witness, who testified as follows:

" That he, as agent and attorney for heirs of J P. Spring,

sold to said Lanigan certain property in Fort Smith for a residence for $4,500; that $2,000 was paid in cash, and the remainder was to be paid when certain proceedings in court were had, so that title could be made of the interest of the minor heirs. That before that could be done, and before the balance was due, one of the adult heirs, Mrs. Haynes, wrote to said Lanigan, urgently requesting him to advance her $500, because she was in great trouble, and said Lanigan referred said letter to him (Carnall), then at Hot Springs. That he wrote at once to Lanigan the letter read in evidence. Got no letter from Mrs. Haynes that he recollected, and no information of said Lanigan that the money had been sent. Long afterwards, and just before he made a deed to Lanigan (June, 1874), and Lanigan paid him balance due, $2,000, witness got information that the money had been sent Mrs. Haynes by said Lanigan. Witness had never seen the note to said Birnie before he settled with Lanigan, and understood Lanigan to say, on witness asking about it, that it was paid, and witness allowed it in settlement, and made deed to the property. Knew that he had gotten the money from Birnie, but did not know, or ask, if his (witness') name was signed to the note.

"Supposed, previously, from what he wrote him, that Lanigan had signed it as attorney. Did not know that Birnie had the note, with witness' name to it, for years afterwards, and as soon as informed there was such a note, signed in such manner, by one not authorized, he utterly repudiated the same, and refused to pay it. Had never given any note at 1½ per cent. per month to stand any length of time, and would not. Was under no obligations to Mrs. Haynes, and derived no benefit from the money whatever.

"That he never, in any manner, nor at any time, ratified

the execution of said note by Sutton. That after the agent of said Birnie spoke to him about it, and exhibited it to him, witness wrote to said Lanigan, then absent, bitterly reproaching him for not having settled the note, as he supposed he had."

Plaintiffs, after introducing the above evidence, again offered the note in evidence, and, on the objection of defendant, the court excluded it.

No further evidence being offered, the jury returned a verdict in favor of defendant, and judgment was entered discharging him.

Plaintiffs moved for a new trial on the ground that the court erred in excluding from the jury the promissory note sued on; the court overruled the motion, and they took a bill of exceptions, and appealed.

I. "Where a writing purporting to have been executed by one of the parties, is referred to and filed with a pleading, it may be read as genuine against such party, unless he denies its genuineness by affidavit before the trial is begun." *Gantt's Dig., sec. 2495; Civil Code, sec. 580.*

Here the note was the foundation of the action, and it purported to have been executed by appellee.

It certainly does not purport on its face to be the note of W. B. Sutton, who appears to have signed the note for appellee, and not for himself. *Newman Plead. and Prac., pp. 138-9-40.*

The original note was not filed with the complaint, as required by *sec. 138 of the Civil Code*, as originally adopted, if in the power of the party to produce it. But, by an amendment of the Code, the plaintiff may file with his complaint a copy of the instrument sued on, as appellant did in this case. *Gantt's Dig., secs. 4599, 4600.*

Now, where plaintiff files a copy, instead of the original,

defendant may take a rule of court upon plaintiff to file the original before answering, or filing an affidavit disputing its genuineness. *Nordman v. Craighead, Guardian, etc., 27 Ark., 369.*

1PLEADING: *Non est factum:* Affidavit.

Where the defendant in his answer directly denies the execution of the instrument sued on, and verifies the answer by his affidavit, we can see no necessity of his filing an additional affidavit, as prescribed by *sec. 2491 of the Digest,* above copied, in order to require the plaintiff to prove its execution.

2. AGENT: What he may delegate to another.

II. It seems that appellee authorized Lanigan to borrow $500 of Birnie, and sign his name to a note therefor. Lanigan accordingly borrowed the money, and at his request, and in his presence, Sutton, his partner, signed appellee's name to the note. This was the act of the agent, and, in legal effect, the act of appellee, the principal, and not of Sutton, who did the mere mechanical act of signing appellee's name to the note by request of Lanigan.

An agent can not delegate any portion of his power requiring the exercise of discretion or judgment; otherwise, however, as to powers or duties merely mechanical in their nature.

Hence, if empowered to bind his principal by an accommodation acceptance, he may direct another to write it, having first determined the propriety of the act himself; and it will bind the principal, though naming the delegate, and not the one exercising the power. *Commercial Bank of Lake Erie v. Norton et al., 1 Hill (N. Y.), 501.*

In the cases cited the court said: "But it is said the agent could not delegate the power to accept the drafts. This is not denied, nor did he do so. The bills came for acceptance, and having, as agent, made up his mind that they should be accepted, he directed Cochrane, the book-

keeper, to do the mechanical part—writing the acceptance across the bills. He was the mere amanuensis. Had any-thing like the trust, which is in its nature personal to an agent, a discretion, for instance, to accept what bills he pleased, been confided to Cochrane, his act would have been void. But to question it here would be to deny that the general agent of a mercantile firm could retain a carpenter to make a box, or a cooper to make a cask. The books go on the question whether the delegation be of discretion."

So in *Ellis v. Francis, 9 Georgia, 327*, where a constable, a public agent, who could not delegate his authority, pro-cured another person to make a return of *nulla bona* upon a *fi. fa.*, in his presence, and by his request, the return was held to be the act of the constable.

The court should have permitted the note to be read in evidence to the jury, with the evidence conducing to prove its execution by appellee, and under proper instructions from the court, they should have returned a verdict upon all of the evidence.

The judgment must be reversed, and the cause remand-ed, with instructions to the court below to grant appellant a new trial.