HOUSER *v.* BURCHART & LEVY.

Opinion delivered July 2, 1917.

1. APPEAL AND ERROR—FINDING OF CHANCELLOR.—This court, on appeal, will not disturb the finding of fact made by a chancellor, unless such finding is against the clear preponderance of the evidence.

2. ACCORD AND SATISFACTION—RESCISSION.—The parties to an accord and satisfaction, may by a subsequent agreement rescind the same and restore the debt to its original status.

3. ACCORD AND SATISFACTION—RESCISSION.—Where by mutual agreement a note which has been the subject of an accord and satisfaction is restored to the holder, and notes and accounts received by him in

satisfaction are returned to the other party, there is a rescission of the accord and satisfaction, and each party is restored to his original status.

Appeal from Cross Chancery Court; *Edward D. Robertson*, Chancellor; affirmed.

*L. C. Going*, for appellant.

1. The payments should be credited on the mortgage debt. The debtor has the primary right to direct the application of payments. 91 Ark. 458; 38 *Id.* 285. The mortgage notes were the oldest item and all credits, even in the absence of direction, should have been credited thereon. 70 Ark. 516; 51 *Id.* 198.

2. The matter was compromised and settled. A completed sale was made. The contract was never abrogated nor new one made. An accord was made and executed and never rescinded. It was a bar to an action on the original claim. Corp. Jur. 1-523-B; 524 note, 13.

*Killough, Lines & Killough*, by *T. E. Lines*, for appellees.

1. There are no payments that should be applied on the note by operation of law. The rule as to application of payments is fully stated in 91 Ark. 465, overruling 38 Ark. 285, and 57 *Id.* 595, relied on by appellant. A settlement and final closing of the original transaction was had. From then the mortgage notes were treated as a separate transaction from the running account. The payments were made to cover specific purchases and were so applied at the time and could not be credited on the notes. 70 Ark. 516 has no application.

The maturity of the note fixes the time for the application. 91 Ark. 466.

2. Only the balance of the account current was paid or settled by the compromise.

3. The contemplated purchase of the Houser stock was not complete and the title did not pass.

4. If there was an agreement of accord and satisfaction, it was rescinded; but there was none. 1 R. C. L.

178, and art. 2; 1 Corp. Jur. 523-4, art. 2; 38 S. W. 446; 58 N. W. 982; 36 L. R. A. 335.

A. Houser instituted this action in the chancery court against Burchart & Levy to restrain them from foreclosing a mortgage which he had given them on certain lots in the town of Wynne, Arkansas, to secure the sum of $2,000. In his complaint he alleges that Burchart & Levy are threatening to foreclose their mortgage and that the same has been satisfied; that if a sale of the lots is made under the mortgage a cloud will be cast upon his title. The facts are as follows:

A. Houser resided at Wynne, Arkansas, and wished to enter the mercantile business there. Burchart & Levy were wholesale merchants at Memphis, Tennessee. For the purpose of establishing a line of credit with them to enable him to purchase goods from them, A. Houser executed to them two promissory notes for one thousand dollars each, dated December 11, 1906, and due respectively one and two years after date. To secure the payment of these notes, he executed to Burchart & Levy a mortgage on certain lots in the town of Wynne. He purchased goods from Burchart & Levy to the amount of several thousand dollars. It is conceded that he made the following payments on the notes:

| | |
|---|---:|
| December 24, 1907, cash | $500.00 |
| February 15, 1912 | 100.00 |
| February 15, 1912 | 100.00 |
| February 15, 1912, discount 2 per cent | 40.00 |
| Total | $740.00 |

In addition to this, it is claimed by Houser that in March, 1909, he made an additional payment of $700 and that this, with the other payments made by him, paid in full the notes. A. Houser's wife, in the main, conducted the business for him, and they both testified that on the 4th day of March, 1909, they were in Memphis and went into the store of Burchart & Levy, when Mr. Houser

handed to a member of the firm his check for $700 and asked that it be credited on the mortgage indebtedness. At this time Mr. Houser owed Burchart & Levy an account for merchandise sold them, but Mrs. Houser stated that the payment was applied to the mortgage debt in order that their property might be released from the mortgage. She stated that her husband had borrowed $1,000 and made the payment out of the money so borrowed and that the remaining $300 was used in replenishing their stock of goods. On the other hand, Leo J. Levy, the cashier of the firm, and the son of one of the partners, testified that it was a part of his duties to receive payment of all moneys paid the firm, and that the $700 check was applied in payment of the account of Mr. Houser. He first stated that the check was brought in by Mr. Houser and handed to him already written out. Upon the check being exhibited to him, he admitted that it had been filled out by himself and then signed by Mr. Houser. He stated positively, however, that the check was to be credited upon the account of Mr. Houser. He testified that during the preceding year Mr. Houser had purchased about $1,500 worth of goods and had only paid about $100; that in March, 1909, he owed the firm a balance of over $1,300 and had not bought any goods or paid any sum on account for some time prior to the payment of the $700 check on his account; that this payment was made because the firm refused to let him have any more goods until he made a payment on his account; that the $500 payment on the note had a notation on the check that it was to be credited on the note. No such notation appears on the $700 check. The bookkeeper of the firm of Burchart & Levy corroborated the testimony of Leo Levy to the effect that it was agreed that the check for $700 should be credited on the account and that it was so credited. Mr. Burchart, a member of the firm, corroborated the testimony of Leo Levy, and stated further that Mr. and Mrs. Houser afterwards admitted to him that the mortgage indebtedness had not been paid.

On the first day of November, 1910, Burchart & Levy entered into a written agreement with Houser in which it was stated that in consideration of the release of certain indebtedness to various firms by Houser, and Burchart & Levy obtaining a release in full for same, that Houser sold and delivered to Burchart & Levy his entire stock of goods to be sold by Burchart & Levy for the benefit of his creditors. Mr. and Mrs. Houser testified that a part of the consideration for the execution of this instrument was that Houser should pay certain local debts in the town of Wynne to the amount of between five and six hundred dollars and that she should release her claim for salary to the amount of about $2,300; that she and her husband carried out their part of the agreement; that Burchart also agreed to discharge his mortgage indebtedness as a part of the consideration and that the stock of goods was turned over to him under the terms of the agreement. On the other hand, Burchart denied that he had agreed to release the mortgage but stated that it was expressly understood that the mortgage was not released, but that the agreement only contemplated a release of the account which was not secured by mortgage. Burchart admitted that the storehouse was locked up and the keys turned over to him after the agreement was executed. He said that the agreement was executed on condition that he secure the release of the other creditors as stated in the agreement and that he was unable to procure them to release their claims against Houser; that because of his failure to secure releases from the other creditors that it was agreed between him and Houser that another agreement should be made in substitution of the former one. In any event, a similar agreement was executed on the 10th day of November, 1910, between Houser and H. A. Ferris, as trustee, for the other creditors. By the terms of this instrument, Ferris took charge of the goods and sold them for the benefit of the creditors of Houser. This agreement was signed by Burchart & Levy and by Houser. Ferris took charge of the stock of goods under this agreement and

sold it, paying the proceeds of sale after deducting the expenses to the creditors ratably.

Ferris testified that he made an inventory of the stock of goods which aggregated $2,455; that he sold them for $1,350; that this gave the creditors a dividend of something over 30 per cent. He also testified that it was expressly understood between Burchart & Levy, Mr. Houser and himself that this agreement was made in lieu of the former one, that he told them that he would not have anything to do with the matter unless this agreement was substituted for the first one and that the new agreement was executed in substitution of the old one in order that he, Ferris, might have complete charge of the matter.

After the submission of the cause Mrs. Houser died. The property in controversy was an estate by the entirety and inasmuch as no personal judgment was sought against Mrs. Houser, no order of revivor was made.

The chancellor found the issues in favor of Burchart & Levy. He found there was a balance due on the mortgage of $1,083.14 and a decree of foreclosure was entered of record. A. Houser has appealed.

HART, J., (after stating the facts). (1) On the question of the application of the payment of the $700 check but little need be said. It is the settled rule of this court not to disturb on appeal the finding of fact made by a chancellor unless such finding is against the clear preponderance of the evidence. Tested by this rule, we can not say that the finding of the chancellor should be disturbed. It is true that both Mr. and Mrs. Houser testified that they directed the credit to be upon the mortgage indebtedness in order that the property might be released from the mortgage. On the other hand, a member of the firm to whom the payment was made testified in positive terms that the payment was made for the express purpose of being applied to the account so that Mr. Houser might purchase other goods. He is corroborated by the bookkeeper of the firm. The other circumstances

also tended to corroborate him. Houser was behind in his account to the firm in an amount of over $1,300. He wished to purchase more goods with which to continue his business, and it was necessary that a payment should be made on his account to enable him to do so. When the $500 payment was made on the mortgage it was so noted on the check by which the payment was made. No such notation was made on the $700 check. This and other circumstances were proper to be considered by the chancellor in determining whether or not Houser directed the payment to be applied to the note or agreed that it might be applied upon his account which was unsecured.

(2) By agreement of the parties the contract between Burchart & Levy and Houser made on the 1st day of November, 1910, in regard to the release of Houser was rescinded by the contract of November 10, 1910. The parties to an accord and satisfaction may by a subsequent agreement rescind the same, and restore the debt to its original status. *Heavenrich* v. *State* (Minn.), 58 N. W. 982. In that case the court said:

"The findings of fact, including the sixth, as to which error is assigned, are fully sustained by the evidence. On those findings the only question is, can creditor and debtor, having made an accord and satisfaction, rescind the same, by a subsequent agreement, so as to restore the debt to its original status, and so that it may be sued without reference to the accord and satisfaction, or the agreement rescinding it? We can conceive of no reason why they can not. It is true that by the accord and satisfaction, so long as it stands, the debt is extinguished. But when it is rescinded, matters stand as though it had never been made."

(3) In *Feder* v. *Ervin,* 38 S. W. 446, 36 L. R. A. 335, the Supreme Court of Tennessee held that when by mutual agreement a note which has been the subject of an accord and satisfaction is restored to the holder and notes and accounts received by him in satisfaction are returned to the other party, there is a rescission of the ac-

cord and satisfaction, and each party is restored to his original status.

It follows that the decree must be affirmed.

