LYNN *v.* QUILLEN.

Opinion delivered February 11, 1929.

*Pratt P. Bacon,* for appellant.

*Gustavus G. Pope, Will Steel* and *James D. Head,* for appellee.

. MEHAFFY, J.   J. J. Lynn and Nancy D. Lynn were husband and wife, and lived together for more than 40 years, rearing a family of five girls.   J. J. Lynn had one son by a former wife.   J. J. Lynn had conveyed to his son, Archie Lynn, 160 acres of land, the appellant joining with him and signing the deed.   After this conveyance to the son, the appellant wanted J. J. Lynn to make deeds to the five girls to the property that he then owned, so that the son, Archie Lynn, would not inherit any part of it, her contention being that he had already received a deed to 160 acres, and that the girls should have the rest of the land.   J. J. Lynn agreed to do this, and, on March 1, 1918, made deeds to Ophelia Quillen, Mabel

Barkman, Mary Eliza Dickert, Fannie Stewart and Agnes Hendren to the land in controversy, a part of which was, prior to that time, the property of appellant.

No objection is made to the deeds conveying property which belonged to J. J. Lynn, but the appellant says she did not agree to convey the 160 acres that she owned, that she did not sign the deeds, and that she did not acknowledge the execution of the deeds.

J. J. Lynn delivered the deeds to J. S. Brooks, the circuit clerk, before whom the deeds were acknowledged. J. J. Lynn died January 9, 1920, leaving his widow, the appellant, and the five girls, to whom the land was conveyed, and also one son, Archie Lynn, surviving him. After his death J. S. Brooks called the parties together and gave them the deeds, the appellant being present at the time. The parties took possession of the lands and occupied them, but appellant testifies that it was a month or two after the deeds were delivered, which was January 20, 1920, before she learned that her land was included. She knew the deeds were being delivered, but she testified she did not know that it included her land. She was unable to read or write. She testified that she did not sign or acknowledge the deeds, and that when they were delivered she did not know that her name was signed to them. She denied acknowledging the deed before J. S. Brooks, and denied having any knowledge of the deeds until the time they were delivered. Appellant lives on the land deeded to Mabel Barkman. All of the grantees, except Mabel Barkman, were married at the time the deeds were delivered, and she is now married. Appellant made no objection to the delivery of the deeds, but said she did not know their contents at that time, and did not learn it for two months. She then learned that her name had been signed to them. She also knew that every one of them took the land that was deeded to them and claimed to own it, and that that condition continued until this suit was brought. She testified that she did not know about the mortgages. Appellant claims that when she found out about the deeds she told them she did

not sign them, but that if they would pay rent for the land she would let it stand, and that they agreed to do this, and some of them have paid rent.

The testimony is undisputed that they took possession of the land, and claimed to own it, with her knowledge, and continued to claim it and pay taxes on it until the time this suit was brought. She did not, according to her testimony, authorize any one to sign her name or acknowledge the deeds. There is no dispute about the deeds having been signed and acknowledged by Lynn and delivered to Brooks to be delivered after Lynn's death.

Brooks, the clerk, testified that he did not see the appellant sign the deed, but that he took her acknowledgment; that he had written the deeds in his office at the request of Mr. Lynn, and he identified the deeds which he wrote. Brooks knew how Mr. Lynn wanted the land divided, and, after writing the deeds and taking Lynn's acknowledgment, he carried the deeds home with him. And, shortly after that, Brooks went to Mrs. Lynn and asked if she acknowledged signing it, and she said she did. He then left the deeds in the office, after certifying to the acknowledgment. Mr. Lynn told him to deliver the deeds after his death, and he kept them until Mr. Lynn's death, in 1920, and then called the children together and delivered the deeds. Mrs. Lynn was present. Witness testified that the appellant said: ''You children get all the land; will you agree for me to get the money in the bank?'' There was about $600, and they all agreed.

The testimony is undisputed that all of the personal property was given to the appellant. It consisted of money, a Liberty bond, savings stamps, and live stock and farming implements.

The appellant testifies very positively that she not only did not sign the deed to her land, but that she did not know it was included, until about two months after the deeds were delivered. She is 69 years old, unable to read or write, and it is undisputed that she requested

her husband to deed the land to the girls, who were her children, as well as his, because the son by a former marriage had already received what she conceived to be his part of the property belonging to her husband.

It is contended by the appellant that the finding of the chancellor is against the preponderance of the evidence, and she insists that she is only required to prove by a preponderance of the testimony that she did not sign or execute the deeds. In this last contention we agree with the appellant. If the preponderance of the evidence is in her favor, this would be sufficient to show that the deed was not executed.

This court has frequently held that the burden of proof rests upon the person denying that he signed the deed or acknowledged it, to show the falsity of the certificate of acknowledgment, but that the weight of the evidence should not be affected by any particular rule peculiar to the subject. But it has also many times held that the recitals of the certificates of an officer authorized by law to take such acknowledgment, regular on its face, are, in the absence of fraud or duress, conclusive of the facts therein stated.

A certificate of acknowledgment to a deed duly placed on record makes a *prima facie* case of the proper execution of the deed. *Polk* v. *Brown,* 117 Ark. 321, 174 S. W. 562; *Nevada County Bank* v. *Gee,* 130 Ark. 322, 197 S. W. 680; *Straughan* v. *Bennett,* 153 Ark. 254, 240 S. W. 30; *Miles* v. *Jerry,* 158 Ark. 314, 250 S. W. 34; *Hale* v. *Mitchell,* 175 Ark. 641, 1 S. W. (2d) 59. Many other cases might be cited to the effect that the certificate of the officer is *prima facie* correct, and that one attacking a deed so executed and acknowledged has the burden of proof and is required to show by a preponderance of the evidence that the deed was not, in fact, signed.

In this case we have the positive testimony of the appellant that she did not sign the deed, but we also have the testimony of the officer that she acknowledged it. We have her admission that she learned about it two months after the deeds were delivered; that the grantees in the

deed occupied and claimed to own the land for several years, and practically all of the circumstances corroborate the statement of Brooks, or at least the fact that, when she discovered, according to her testimony, that the deeds had been made, she acquiesced in the making and delivery of the deeds. She was 69 years old, unable to read and write, and the husband who had the deeds written was dead, and the transaction was what she wished and had urged her husband to do, except, as she claims, this did not apply to her 160 acres of land. At any rate, whether she did or did not sign the deed or acknowledge it and ratify the execution and delivery, is a question of fact, and the chancellor's finding will not be disturbed by this court, unless the finding is against the preponderance of the evidence.

In appeals from the chancery court trials are *de novo*, but the findings of fact by the chancellor are allowed to stand unless they are clearly against the preponderance of the evidence. *Henry* v. *Erby,* 175 Ark. 614, 1 S. W. (2d) 49; *Doane* v. *Rising Sun Mining Co.,* 139 Ark. 605, 213 S. W. 399; *Hyner* v. *Bordeaux,* 129 Ark. 120, 195 S. W. 3; *Midyett* v. *Kerby,* 129 Ark. 309, 195 S. W. 674; *Houser* v. *Burchart & Levy,* 130 Ark. 178, 197 S. W. 28; *Ferguson* v. *Guydon,* 148 Ark. 295, 230 S. W. 260.

Appellant calls attention to numerous authorities which hold that, the statute not being complied with, the signatures are not *prima facie* the signatures of appellant, and that therefore the burden is on appellee to establish by a preponderance of the evidence that appellant did sign these deeds. But, even if the statute was not complied with, appellant ratified the signature and the acts of the clerk when she acknowledged the deed before the clerk. She not only, according to the testimony of Brooks, acknowledged the execution of the deeds before him, but she ratified it when she had a meeting with the grantees and they gave her all of the personal property.

There is some conflict in the testimony with reference to what took place, but the conduct of the parties

corroborates the testimony of the grantees and shows very clearly, we think, that appellant ratified the signature and acknowledgment.

Signature, as contended by the appellant, while it includes mark when a person cannot write his name, must be written and witnessed by a person who writes his own name as a witness. But, when the acknowledgment is before a proper officer, although there is no witness to the mark, and the name may have been written by another, it will be considered an adoption of the written name, and especially is this true when the conduct of the party clearly indicates that she acquiesces in the transaction. And this court has said, in substance, that, while the mark of one who is unable to write is not to be considered a signature unless the person writing his name writes his own name as a witness, still it has also said that this only means that such signature is not taken as *prima facie* true without other proof of the signing, and the statute was not intended to exclude other proof. *Ex parte Miller,* 49 Ark. 18, 3 S. W. 883; *Davis* v. *Semmes,* 51 Ark. 48, 9 S. W. 434; *Fakes* v. *Wilder,* 70 Ark. 449, 69 S. W. 260; *Ward* v. *Stark,* 91 Ark. 268, 121 S. W. 382.

Although the statute may not be complied with, and the name may be written without authority, still, if the person whose name is signed to the instrument goes before an officer authorized to take acknowledgments and acknowledges the instrument, he thereby ratifies the signature, and it is as valid and binding as if he had written his name himself, or, if he could not write, had signed by mark and the mark was witnessed.

"The signatures of James Hill and Phoebe Hill by marks did not appear to be attested, as provided by our statute. J. H. Hill and Phoebe Hill could not read and write. The method provided by statute for attesting the signature of a person who cannot read or write is not exclusive, but only establishes *prima facie* the genuineness of the signature without other proof of signing. The grantors in this deed appeared before a justice of the peace and acknowledged the execution of the deed. Their

signatures were signed to the deed, and, even if unauthorized, they were ratified by the grantors appearing before the justice of the peace and acknowledging the execution of the deed." *Naill* v. *Kirby*, 162 Ark. 140, 257 S. W. 735.

Appellant claims that the parties paid her rent, but, even if her contention in this respect is true, she had already ratified the signature when she went before J. S. Brooks, and did at this time agree, in the presence of all the parties, that the deeds might stand if they would pay her rent. At any rate, she admits that she agreed they might stand, and says they were to pay rent, but the appellees testify that they did not agree to pay rent, and that they never paid any rent. One of the sons-in-law testified that he gave her some corn, but did not give it to her as rent, but merely gave it to her. Appellant not only knew that the appellees were occupying the land, claiming it as their own and paying taxes thereon, but she stood by for more than seven years without making any claim to the land at all, and permitted them to exercise ownership, claim it as their own, and she is thereby estopped to claim that the deeds were not properly executed. She also saw the improvements made on some of the property. But when she permitted them to claim it, to exercise ownership, and pay the taxes, knowing all the time that they were claiming it as their own, she could not have the deeds set aside.

Section 6942 of Crawford & Moses' Digest provides, among other things: "No person or persons, or their heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments, but within seven years next after his, her or their rights to commence, have or maintain such suit, shall have come, fallen or accrued."

As to all the issues involved in this case, that is, whether she signed the instruments or acknowledged them, or stood by and permitted the grantees to claim it as their own, occupy it, mortgage it, pay taxes on it, are all questions of fact, and the finding of the chancellor is supported by the evidence.

The decree is therefore affirmed.