HARRELL *v.* SOUTHWEST MORTGAGE COMPANY.

Opinion delivered December 9, 1929.

*Ward & Ward,* for appellants.

*Arthur Sneed,* for appellee.

MEHAFFY, J.   Appellants had borrowed money from the Missouri State Life Insurance Company, upon which they were paying 6 per cent. interest.  The Clay County Abstract Company advertised that it had money to lend at a low rate of interest, a long time to repay, and no commission.  Appellants saw this ad, and applied to the Clay County Abstract Company for a loan on their farm. They desired to increase the loan; that is, to borrow more money than enough to take up their loan with the Missouri Life Insurance Company, and they also wished to get it at a lower rate of interest.

The Clay County Abstract Company was operated by Ira C. Langley and O. R. Winton.  The Missouri State Life Insurance Company at first refused to permit payment of the loan to it because it was not due, but finally, through the efforts of Ira C. Langley, it agreed to accept payment of its loan.

The appellee, through the Clay County Abstract Company, agreed to lend appellants $5,000, and they exe-

cuted note and mortgage to secure the payment of the $5,000, together with ten interest notes, the loan being for ten years.

The appellants went to the office of the Clay County Abstract Company to execute the necessary papers to complete the loan. The papers were signed and acknowledged before O. R. Winton. At the same time that the mortgage for $5,000 and notes were executed, it is alleged that a second mortgage for $500 was executed to secure four notes of $125 each for commissions. This suit was brought to foreclose the second mortgage.

There is no controversy about the first mortgage for $5,000, and no controversy about the interest notes, but appellants contend that they did not sign the second mortgage and the notes which it secured, and did not agree to pay any commission.

Copies of the notes and mortgage sued on were filed with the complaint. Defendants answered, denying the execution of the second mortgage and notes which it secured, and their answer was verified, and later appellants filed an affidavit denying the genuineness of the four promissory notes and mortgages involved in this suit.

O. R. Winton, who took the acknowledgment of plaintiffs to the mortgages, and in whose presence it is alleged that the notes were signed, was dead at the time the testimony was taken, and, of course, his testimony could not be had.

The evidence shows conclusively that the attorney, Arthur Sneed, had in his possession the original mortgage and notes in court, but they disappeared, and could not be found during the trial. The clerk testified from the mortgage record, and introduced a certified copy of the mortgage.

The appellants testified that they did not sign the four notes sued on as commission for securing the loan, and that they knew nothing about the second mortgage or the notes which it secured, and did not agree to pay any commission. The commission was not payable to

the Clay County Abstract Company or to Langley or Winton.

On cross-examination appellant, Frank A. Harrell, was handed a photostatic copy of the second mortgage, and asked whether the signature resembled his, and he said it did a little bit; that it looked something like it, but that he did not sign it, even if it did look like his signature.

Witness had written, requesting the mortgage to be sent to the Bank of Piggott, but, instead of sending the original, they sent copies. They admitted that they signed the $5,000 mortgage and the notes which it secured, and this mortgage was introduced for the purpose of showing the signature, and for no other purpose. They contended that they did not sign the second mortgage and notes, but that, if they did sign, it was a fraud, and that they had been tricked into signing it; that, if the signature was theirs, it was obtained by some kind of a scheme; by fraud. Both of them could read and write, and testified that Winton handed them the mortgage, and Harrell read it, and then Winton picked up ten papers which he called coupons. They represented interest on the loan, and he told them to sign them, and after Harrell had signed they were passed over to his wife, and she signed them.

Harrell testified that the signature on the copies looked very much like his, but, if it was, it was obtained by error, and he did not mean to sign them; testified that what he really meant was that his signature was obtained through fraud. Witness does not know whether he read all the papers that he signed or not. He said Winton was in a hurry, and that he sat at one table and signed the papers and his wife sat at a different table in the same room.

Mrs. Harrell, the wife of Frank A. Harrell, testified substantially the same as her husband, but she said she did not know whether it was her signature or not, and she did not know whether it was her husband's signature, but that they resembled her signature all right, but she

did not sign them. She just signed what was handed to her after Mr. Harrell had signed them, and did not pay close attention.

The only question involved is a question of fact. If the appellants signed the notes and mortgage without being induced to do so by fraud, they are liable. If they did not sign them, or if their signatures were obtained by fraud, and they did not agree to pay any commission, then they are not liable.

It is appellants' contention that the proof is not sufficient, because they filed an affidavit denying the genuineness of the second mortgage and notes, and that when they filed this affidavit the burden was upon the appellee to show that the signatures were genuine. The fact that the answer was sworn to by the parties makes no difference, because Harrell simply swore that he verily believed that he had a good and valid defense, and that the facts stated in the answer were true to the best of his knowledge and belief. But there was an additional affidavit denying the genuineness of the mortgage and notes, and a proper affidavit denying the genuineness, either in the answer or a separate affidavit, would be sufficient. This affidavit was made in compliance with § 4114 of C. & M. Digest, which provides: ''Where a writing purporting to have been executed by one of the parties is referred to in and filed with a pleading, it may be read as genuine against such party, unless he denies its genuineness by affidavit before the trial is begun.''

The purpose of the statute is to permit the party who files a written instrument with his pleadings to introduce it in evidence as genuine, unless its genuineness is first denied under oath. When this affidavit is made and its genuineness is denied, then the party, without some other evidence, could not introduce the instrument as genuine.

This court said, in discussing this statute: ''It means only that, in the absence of such an affidavit, the party offering the instrument may introduce it without proof of its execution, and that it is taken *prima facie*

as genuine, but its genuineness may be contested. In other words, the statute merely establishes a rule of evidence, and does not bar the opposite party absolutely of his right to contest its genuineness, nor does the failure to deny its genuineness by affidavit give it the force of absolute verity. Where such an instrument is pleaded in a complaint, its genuineness is not in issue unless denied in the answer; but the pleading of such an instrument in the answer by way of defense does not call for a reply from the plaintiff. He may, by failing to file the necessary affidavit, permit it to be read as *prima facie* genuine, and then introduce evidence contesting its genuineness." *St. L. I. M. & S. R. Co.* v. *Smith,* 82 Ark. 105, 100 S. W. 884; *J. R. Watkins Medical Co.* v. *Montgomery,* 140 Ark. 487, 215 S. W. 638; *Mo. Pac. Ry. Co.* v. *Yarnell,* 65 Ark. 320, 46 S. W. 943; *Weaver* v. *Carnall,* 35 Ark. 198, 37 Am. Rep. 22; *Hall* v. *Rea,* 85 Ark. 269, 107 S. W. 1176.

Where the affidavit is filed in compliance with the statute, it is then necessary for the plaintiff to prove the execution of the instrument. If the affidavit is not filed, the instrument may be introduced in evidence without other proof of its execution.

The Supreme Court of New Mexico, in construing a similar statute, said: "The genuineness of an instrument evidently goes to the question of its having been the act of the party just as represented; or, in other words, that the signature is not spurious, and that nothing has been added to it or taken away from it which would lay the party changing the instrument or signing the name of the person liable to forgery. The due execution of an instrument goes to the manner and form of its execution, according to the laws and customs of the country, by persons competent to execute it." *Puritan Mfg. Co.* v. *Toti & Gradi,* 14 N. M. 425, 94 Pac. 1022; *Moore* v. *Copp,* 119 Cal. 429, 51 Pac. 630; *Baldwin* v. *Van Deusen,* 37 N. Y. 487.

The Idaho Supreme Court said, in discussing a question similar to the one in this case: "Could it be con-

tended that setting up those facts of fraud and deceit was denying the genuineness and due execution of the note? Clearly not. We think that the law in the case at bar set up for plaintiff every defense against this release that the company set up in their answer in our supposed case, unless it should be contended that their defense of fraud and misrepresentation was a denial of the genuineness and due execution of the instrument, which we do not think could be maintained, even if their answer was verified." *Cox* v. *Northwestern Stage Co.*, 1 Idaho 376.

It is clear, from all the decisions that we have found construing this statute, that the only purpose and effect of the statute is to require proof of the execution of the instrument before its introduction. Or, in other words, to require proof other than merely the certificate of the officer or the alleged signatures of the parties. And, even if the affidavit is not filed, still the alleged maker of the instrument may show that it was procured by fraud, and that it is void. Even where the signature is genuine, the party may prove that the instrument is void because obtained by fraud. Therefore the only question involved is whether the evidence in this case shows that this second mortgage and notes which it secured were genuine. That is, whether the appellants executed the mortgage and notes. If the affidavit had not been filed, they would have been admitted as genuine. That is, that they, in fact, executed the instrument. It would, however, not prevent the makers from showing that they were obtained by fraud. As to whether the appellant signed the notes and mortgage was, as we have already said, a question of fact, and the finding of the chancellor is sustained by the evidence.

It is contended, however, by appellant that some of the evidence introduced on the part of the appellee was incompetent, and that for that reason the case ought to be reversed. We try chancery cases here *de novo,* and if there was incompetent testimony before the chancellor it was his duty to disregard it. But when it is here on appeal this court, no matter what the chancellor may

have considered, disregards all incompetent testimony, and not only tries the case *de novo,* but tries it on the competent testimony in the case. *Lasker-Morris Bank & Trust Co.* v. *Gans,* 132 Ark. 402, 200 S. W. 1029.

The evidence in this case shows that the mortgage for $5,000, and the notes which it secured were signed by the appellants. They both admit signing these notes and mortgage. There is evidence tending to show that the signature on the $5,000 mortgage and notes which it was given to secure was the same as the signature on the second mortgage and notes sued on. The parties themselves admit that the signature is very much like their signature, but contend that, if they had signed, they were induced to do so by the fraud of the other party. These were questions of fact, and this court has many times held that a chancellor's finding on a question of fact will be permitted to stand unless it is clearly against the preponderance of the evidence.

This court recently said: "It is the settled rule of this court that the findings of fact made by a chancellor will not be disturbed upon appeal unless they are clearly against the preponderance of the evidence." *Turner* v. *Adams,* 178 Ark. 67, 10 S. W. (2d) 41; *Fort Smith* v. *Norris,* 178 Ark. 399, 10 S. W. (2d) 861; *Barton* v. *Hardin,* 178 Ark. 1150, 13 S. W. (2d) 624.

The chancellor found in favor of the appellees, and he therefore must have found that the second mortgage and notes which it was given to secure were executed by the appellants, and they were not induced to sign the same, because of any fraud practiced by the other party. And, since the chancellor's findings on these facts are not against the preponderance of the evidence, it becomes unnecessary to discuss other questions discussed by learned counsel.

The chancellor's finding being supported by the evidence, it is binding upon this court, and the decree is therefore affirmed.