SUITS *v.* CHUMLEY, ADMINISTRATOR.

4-9415                                    236 S. W. 2d 1001

Opinion delivered March 5, 1951.

*Hardin, Barton & Shaw, Robert L. Jones, Jr.,* and
*P. H. Harding,* for appellant.

*Geo. W. Johnson, Robert E. Johnson* and *Harper,
Harper & Young,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Frank Suits,
filed his claim in the sum of $2,700 against the estate of
John H. Chumley, deceased, for services rendered dece-
dent for three years prior to Chumley's death in August,
1949. This appeal is from the judgment of the probate
court disallowing the claim.

John H. Chumley owned and operated a farm in
Sebastian County for many years. During the last few

years of his life his farming operations were confined principally to livestock raising with a herd of from 30 to 50 cattle. Appellant lived on decedent's farm at different times beginning in 1939 performing general farm labor. Appellant married in 1944 and continued to reside with and work for decedent. The evidence is conflicting as to the continuity of appellant's residence on the farm and the performance of services during the three-year period immediately preceding Chumley's death. While appellant and his wife testified that he was not paid for his work, it was admitted that he paid no house rent and that decedent furnished groceries for appellant and his family when he was not working out on other jobs.

Appellant testified that he would "take different spells" of working in the coal mines for others for a month or two months at a time while still living with decedent during the three-year period. He first estimated that he worked for others a third of the time during this period, but later stated that he only worked a month or two each year and denied working anywhere else the last year.

About five or six weeks prior to Chumley's death appellant began work at a sawmill in Scott County where he worked until about two weeks before Chumley's death. There is evidence that during this period appellant's wife and two children lived with him at the sawmill part of the time and with her father part of the time. Appellant testified that decedent sent him to work in Scott County in order that the mill might be moved on decedent's place to cut timber for the construction of another house and barn on the place. Decedent was then 73 years of age and crippled by the loss of a leg in July, 1946. There were already five houses on the place and four of these were unoccupied most of the time.

Appellant's witness, Constable Rogers Condrey, testified that about two or three weeks before Chumley died the latter was in Mansfield inquiring of appellant's whereabouts and stated that he was sick and needed appellant; that witness told decedent that appellant said

he had to go away to get some money and decedent replied: "Well, I'm going to pay him. I'm going to take care of them."

Appellant's wife testified that she had heard decedent ask appellant on two or three different occasions what he would do if he had a certain amount of money. She also stated that appellant would threaten to move to California and decedent would beg him to stay and say that appellant would be rewarded after decedent's death for doing so.

Jess Grissom stated that he lived on decedent's place for six months in 1945 and that decedent told witness that appellant had been so good to him that he intended for appellant to have everything he owned at decedent's death.

Appellee offered testimony tending to show that appellant lived on decedent's place only a part of the three-year period immediately preceding Chumley's death. One neighbor testified that decedent was at his place during hay cutting time in the summer of 1949 looking for some help; that witness asked decedent about appellant and decedent replied that "he got rid of him". A forest ranger, whose place adjoined decedent's farm, stated that five weeks before Chumley's death he helped the latter extinguish a fire on his place; that appellant was not living there at that time and that there were other times during the three-year period that he did not live on decedent's place. Another neighbor stated that appellant lived on decedent's place "off and on" during the three years and that another man lived in one of decedent's houses and worked for him in 1947.

Rice Bruce, who lived in the community, told of conversations with appellant in which the latter stated that decedent paid him for his work; that he could make more money working for others, but that he liked to be with decedent. He also stated that appellant and decedent were "great cronies" and that appellant frequently moved on and off the place during the three-year period. Although appellant testified in rebuttal, he made no de-

nial of the conversations related by Bruce. Several witnesses who had worked for decedent at different times stated that he always paid them in cash.

In urging reversal of the judgment appellant correctly states the rules of law which we have followed in cases of this kind. Here appellant and his family resided with decedent in his home during the time the services are alleged to have been performed. Under these circumstances, and even though the parties were not related by consanguinity or affinity, the presumption is that the services were gratuitous and the burden of proof was upon appellant to show otherwise. *The Peoples National Bk. Admr.* v. *Cohn,* 194 Ark. 1098, 110 S. W. 2d 42. It was incumbent on appellant to establish an agreement, either express or implied, that compensation should be paid for services rendered. The obligation to pay will be implied if the circumstances in proof are sufficient to show that, at the time the services were rendered, it was understood by both claimant and decedent that the former should receive compensation. Where the evidence is sufficient to establish an implied promise of compensation, the claimant may recover on a *quantum meruit* basis. *Nissen* v. *Flournoy,* 160 Ark. 311, 254 S. W. 540.

It is fairly certain from the testimony that appellant performed some services for decedent during a considerable portion of the three-year period for which he seeks judgment on his claim. If it should be conceded that the evidence was sufficient to establish an implied promise of compensation, the question whether appellant was actually paid for his services still remains a sharply disputed one of fact. If the testimony of Rice Bruce is to be credited, appellant was paid for his work. There are other circumstances in evidence which point to this conclusion. In weighing the conflicting testimony on this issue, the trial court had the advantage of observing the demeanor of the witnesses and their manner of testifying.

Appellant also insists that reversible error was committed in the admission of evidence of decedent's general reputation for paying his debts promptly in cash. Cases from other jurisdictions are cited in support of this con-

tention, but we find it unnecessary to pass on the question. As in chancery cases, we try appeals from the probate court *de novo* and consider only the competent testimony regardless of the ruling of the trial court on the challenged evidence. *Harrell* v. *Southwest Mortgage Co.*, 180 Ark. 620, 22 S. W. 2d 167; *Walsh* v. *Fairhead, Executrix*, 215 Ark. 218, 219 S. W. 2d 941; *Morris* v. *Arrington, Administratrix*, 215 Ark. 564, 221 S. W. 2d 406. After disregarding the challenged evidence, we cannot say that the judgment disallowing appellant's claim is against the greater weight of the competent evidence.

The judgment is affirmed.